FILED

2018 Sep-07  PM 12:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA, BIRMINGHAM DIVISION

| | | |
|---|---|---|
| JAMES BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-0997-JHE |
| | ) | |
| JEFFERSON DUNN, et al., | ) | |
| | ) | |
| Defendants. | ) | Hon. John H. England, III |

## PRETRIAL ORDER

Pretrial conferences were held in the above case on August 20, 2018 and September 5, 2018,

wherein as a result of which, the following proceedings were held and actions taken:

**1.    APPEARANCES**

Appearing at the conferences were:

*For Plaintiff*:
      Sarah Grady
      Adair Crosley
      Barry Goheen
      Theresa Kleinhaus

*For Defendants Hood & Roddam*:
      Philip G. Piggott

*For Defendant Jefferson Dunn:*
      Gary L. Willford, Jr.

**2.    JURISDICTION AND VENUE**

a.    The court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

b.    All jurisdictional and procedural requirements prerequisite to maintaining this action

have been met.

c.    The Defendants do not contest personal jurisdiction, or venue in this district.

**3.    PARTIES AND TRIAL COUNSEL**

Any remaining fictitious parties are hereby **STRICKEN**. The parties before the Court and designated trial counsel are correctly named as set out below:

| Parties | Trial Counsel |
|---|---|
| James E. Barber (P) | Sarah Grady |
| | Theresa Kleinhaus |
| | Adair Crosley |
| | Barry Goheen |
| | Bethany Rupert |
| | Henry F. Sherrod, III |
| Hugh Hood (D) | Philip G. Piggott |
| | Benjamin T. Presley |
| Roy Roddam (D) | Philip G. Piggott |
| | Benjamin T. Presley |
| Jefferson Dunn (D) | Gary L. Willford, Jr. |
| | Carrie Gray Shaw |

**4.    PLEADINGS**

The following pleadings have been allowed:

a.    Plaintiff's Amended Complaint (Doc. 18);

b.    Defendants Roddam's and Hood's Supplemental Answer to Plaintiff's Amended Complaint (Doc. 22); and

c.    Defendant Dunn's Answer to Plaintiff's Amended Complaint (Doc. 23).

**5.    STATEMENT OF THE CASE**

a.    **Narrative Statement of the Case**

Plaintiff's Version:

This is a civil rights action filed by inmate James Barber, who is incarcerated with the Alabama Department of Corrections (ADOC).  Mr. Barber alleges that Dr. Hugh Hood and Dr. Roy Roddam denied him constitutionally adequate medical care for end-stage degenerative joint disease

in his left hip. Dr. Hood and Dr. Roddam were both employed by Corizon, LLC, the entity that contracted with the Alabama Department of Corrections to provide healthcare to inmates incarcerated with the ADOC. Dr. Hood and Dr. Roddam deny that they failed to provide adequate medical care to Mr. Barber.

<u>Defendants' Version:</u>

This is a civil rights action filed by inmate James Barber, who is incarcerated with the Alabama Department of Corrections (ADOC) on Death Row at the Donaldson Correctional Facility for murder.   Mr. Barber alleges that Dr. Hugh Hood and Dr. Roy Roddam denied him constitutionally adequate medical care for end-stage degenerative joint disease in his left hip. Dr. Hood and Dr. Roddam were both employed by Corizon, LLC, the entity that contracted with the Alabama Department of Corrections to provide healthcare to inmates incarcerated with the ADOC. Dr. Hood and Dr. Roddam deny that they failed to provide adequate medical care to Mr. Barber. Jefferson Dunn is the Commissioner of the Alabama Department of Corrections.  Commissioner Dunn had no knowledge or involvement in the medical care that was provided to the Plaintiff.  The Plaintiff has sued Commissioner Dunn solely in his official capacity and seeks only equitable relief.

b.   **Undisputed Facts**

1.   At all times relevant to this case, James Barber was an inmate at Donaldson Correctional Facility. Barber has been incarcerated since May 2001.

2.   Donaldson Correctional Facility is an Alabama state correctional facility.

3.   From May 2013 through the present, Dr. Roddam has worked at Donaldson Correctional Facility as the Medical Director.

4.   From November 2007 through the present, Dr. Hood has been either the Assistant Medical Director or the Physician Director for the state of Alabama.   In that capacity Dr. Hood

oversees the Medical Directors and the mid-level medical providers at the various correctional facilities across the state of Alabama.

5.      Mr. Barber was diagnosed with degenerative joint disease in his left hip in 2004.

6.      Degenerative joint disease is a progressive disease that occurs when the cartilage at joints between the bones wears down.

7.      Mr. Barber has not received hip replacement surgery.

c.      **Plaintiff's Claims**

A reasonable jury could conclude that Defendants Hood and Roddam[1] acted with deliberate indifference toward Mr. Barber's serious medical need. Specifically, Plaintiff will present evidence demonstrating that during the past several years of his incarceration, Mr. Barber has suffered from degenerative joint disease, a serious medical condition which, at this point, clearly warrants treatment.

Plaintiff will show that Defendant Hood was deliberately indifferent to Mr. Barber's serious medical condition when he repeatedly denied Mr. Barber treatment to address his severe degenerative joint disease, including Dr. Hood's decision to deny the request for Mr. Barber to receive hip replacement surgery without explanation or any alternative treatment plan. Plaintiff will show that Defendant Roddam was similarly deliberately indifferent to Mr. Barber's serious medical condition when, following that denial by Dr. Hood, he failed to take any further action to address Mr. Barber's debilitating pain and crippling condition.

Finally, Plaintiff will demonstrate that as a result of Defendants' deliberate indifference, he has been subjected to years of extreme pain, the inability to ambulate or participate in other

---

[1] Plaintiff has also brought a claim for injunctive relief against Defendant Jefferson Dunn in his official capacity. Because Defendant Dunn will not be a party to this jury trial, Plaintiff has not included him within this section of the proposed final pretrial order.

4

activities of daily living, which is especially cruel given the severe limitations he is already subject to by virtue of being incarcerated. Plaintiff will further elicit evidence of the severe emotional trauma this has inflicted on him as his complaints of pain and disability have been met with callous disregard. Plaintiff James Barber will ask the jury to award him compensatory damages to address his physical and emotional pain and suffering, and to award punitive damages against Defendants Hood and Roddam.

Claims: (1) Refusal to provide him with adequate medical care as required by the Eighth Amendment and in violation of 42 U.S.C. § 1983; and (2) Failure to intervene as required by the Eighth Amendment and in violation of 42 U.S.C. § 1983.

Supporting Legal Citations:

–   *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016);

–   *Fields v. Corizon Health, Inc*., 490 Fed. Appx. 174, 185 (11th Cir. 2012);

–   *Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996);

–   *Simmons v. Fla. Dep't of Corrs*., 2016 WL 7116212, at *18 (M.D. Fla. Apr. 20, 2016);

–   *Braggs v. Dunn*, ___ F. Supp. 3d ____, 2017 WL 2773833, at *56 (M.D. Ala. June 27, 2017);

–   *Dang v. Sheriff, Seminole Cnty*., 856 F.3d 842, 850 (11th Cir. 2017);

–   *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016); and

–   *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012).

d.   **Defendants' Defenses**

The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs. *Campbell v.*

*Sikes*, 169 F. 3d 1353, 1363 (11ᵗʰ Cir. 1999). Citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976); See also *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1972) (Eighth Amendment is applicable to the states through the Fourteenth Amendment). In order to prevail on an Eighth Amendment claim, an incarcerated inmate must make both an objective and a subjective showing. In *Sims v. Mashburn*, 25 F.3d 980 (11ᵗʰ Cir. 1994), the court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983; see also, *Goebert v. Lee Cnty.*, 510 F. 3d 1312, 1326 (11ᵗʰ Cir. 2007).  Therefore, Barber must prove that there was "a substantial risk of serious harm," that Dr. Hood and Dr. Roddam were subjectively deliberately indifferent to that risk, and causation.  *Hale v. Tallapoosa Cnty.,* 50 F. 3d 1579, 1582 (11ᵗʰ Cir. 1995); see also *Farmer v. Brennan,* 511 U.S. 825, 832-34, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

> For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11ᵗʰ Cir. 1991)(citations omitted).  A medical need may be considered serious if a delay in treating it makes it worse. *Danley v. Allen*, 540 F. 3d 1298, 1310 (11ᵗʰ Cir. 2008).  To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F. 3d 1254, 1258 (11ᵗʰ Cir. 2000)(citation and internal quotations omitted).

*Palazon v. Sec'y for the Dep't of Corr.,* 361 F. App'x. 88, 89 (11ᵗʰ Cir. 2010).

The law is clear that a difference of opinion between an inmate and his medical providers as to the appropriate course of treatment does not amount to deliberate indifference and does not

give rise to a claim under § 1983.  See *Harris v Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991)(as long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim; see also *Adams v. Paog*, 61 F.3d 1537, 1547 (concluding that the medical providers "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under § 1983"); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)(evidence showed prisoner received significant medical care in jail and although he may have desired different treatment "the care of the jail provided did not amount to deliberate indifference") cert. denied, 475 U.S. 1096, 106 S. Ct. 1492, 89 L.Ed. 2d 894 (1986).

The defendants adamantly deny the allegations of Barber.  The defendants adamantly deny that Barber has been subjected to years of extreme pain, the defendants deny that Barber has an inability to ambulate or to participate in activities of daily living.  In fact, the medical providers as well as multiple correctional officers have witnessed Barber fully participate in activities of daily living without difficulty.  Barber has no problem with ambulation or activities of daily living. Barber is seen regularly by the medical staff at the Donaldson Correctional Facility and Barber's medical treatment is provided to him within the standard of care of physicians, medical providers and nurses within the state of Alabama.  Furthermore, Barber was sent out to an orthopedic specialist, Dr. Thomas Powell, who reviewed and evaluated Barber's x-rays and CT scans and is of the opinion that at this juncture Mr. Barber is not a candidate for total hip replacement surgery. There is no evidence of deliberate indifference.

With respect to the equitable claim against Commissioner Jefferson Dunn, his presence as a Defendant in this lawsuit is wholly unnecessary.  Inmates do not have a right to a ***specific*** kind of medical treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983)

(holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***.") (Emphasis added). Additionally, neither the Plaintiff nor this Court should substitute their medically untrained judgment for the professional judgment of the medical health professionals who provided evaluations and treatment of the Plaintiff during his incarceration. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received medical care, although the plaintiff may have desired different modes of treatment, care did not constitute deliberate indifference); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments").

Furthermore, there is no evidence that Commissioner Dunn has any kind of medical education, training or expertise. He must rely on the professional judgment of the medical professionals who have been retained to provide care for inmates. In Williams v. Limestone County, 198 Fed. App'x. 893 (11th Cir. 2006), the Eleventh Circuit addressed in an unpublished opinion the issue of whether an inmate may maintain a medical claim under § 1983 against prison officials with no medical background. In Williams, the Eleventh Circuit held:

> [S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir.1988). In this case, Sheriff Blakely promulgated general procedures for dealing with emergency situations, which procedures relied primarily on the medical expertise NaphCare was obligated by contract to provide …. "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391, [] (1997). See also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). Williams [the plaintiff], as the district court concluded, thus failed

> to meet his burden on summary judgment of establishing that Sheriff Blakely's failure to train jail personnel amounted to deliberate indifference to Williams' serious medical condition.

198 Fed. App'x at 897-98.

The Eighth Circuit has also addressed whether a prison official may be held liable for claims of deliberate indifference to a medical condition when medical treatment is provided.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director (a trained and licensed nurse) for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."  302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).  Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court noted, "[t]he law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision."  302 F.3d at 849.

The Plaintiff's requested equitable relief is an order from the Court directing Commissioner Dunn to obtain a hip replacement for him.  Commissioner Dunn cannot provide that relief.  He is not a doctor.  He has no power to order a doctor to perform a hip replacement or any other surgery.  Accordingly, the remedy the Plaintiff seeks is one that the Commissioner is powerless to provide.

Furthermore, as set forth above, the Plaintiff has received medical care from trained and licensed medical doctors.  The Plaintiff has provided no medical testimony from any *treating* physician who has concluded the Plaintiff requires a hip replacement.  Accordingly, even if it were

possible to craft a relief order directed to Commissioner Dunn, it would be of the kind that the 11th Circuit has held courts should be hesitant to find.  Waldrop, 871 F.2d at 1035.

### 6.   DISCOVERY AND OTHER PRETRIAL PROCEDURES

#### a.   **Pretrial Discovery**

Pursuant to previously entered orders of the Court, discovery is closed, except that the Court recently permitted Plaintiff to issue a subpoena to Tech Care X-Ray for all X-ray images of Mr. Barber's hips and pelvis taken during an April 18, 2018 X-ray. (Doc. 97). Plaintiff's subpoena requests a response by August 3, 2018, and Plaintiff agrees to provide the parties with any documents received in response.

#### b.   **Pending Motions**

There are no motions pending.

#### c.   **Evidentiary Issues and Motions *in Limine***

The parties anticipate filing one or more motions *in limine*, which will be due on or before September 14, 2018.

Most evidentiary issues may be resolved through a stipulation of the parties. A motion *in limine* should be filed only if there is genuine disagreement. Prior to filing any motion *in limine*, moving counsel shall contact the opposing counsel and determine if there will be opposition to the motion. All motions *in limine* shall include, in the caption under the case number, a notation that the motion is "**Opposed**" or "**Unopposed.**" In addition, the first paragraph **SHALL** briefly summarize the parties' attempt to resolve the issue and set forth areas of agreement and disagreement. If the motion is opposed, the Court will withhold ruling on the motion for a period of **three business days** to permit opposing counsel time to submit a response to the motion. The

Court may enter a briefing schedule for a particular motion which will supersede this general schedule.

      **7.**     Unless otherwise ordered, parties shall follow the deadlines for pretrial disclosures established in Fed. R. Civ. P. 26(a)(3). Within seven (7) calendar days after disclosure indicating testimony will be presented by deposition, responsive or rebuttal portions of deposition testimony shall be designated and opposing counsel shall be notified of any objections. Thereafter, the parties shall meet and attempt to work out all objections to the proposed deposition testimony. If there are unresolved objections after the parties consult, at least fourteen (14) days before trial the parties shall submit to the court, in writing, proposed deposition testimony and any unresolved objections thereto. A brief argument may be submitted at that time, if necessary. All objections not made as required by this order shall be deemed waived.

      **8.**     **TRIAL – JURY**

      a.     Proposed Voir Dire:  At least fourteen (14) business days prior to the scheduled trial date, the parties shall jointly submit any special questions or topics for voir dire examination of the jury venire in Word format to the court at england_chambers@alnd.uscourts.gov.  Where the parties cannot agree, counsel shall identify the question as disputed in bold type and label it to show which party is requesting the disputed question.  The court's civil voir dire template may be found on the court's website at http://www.alnd.uscourts.gov/content/magistrate-judge-john-h-england-iii, and counsel need not include the items covered by the court.

      b.     Proposed Jury Charges:  At least fourteen (14) business days prior to the scheduled trial date, the parties shall file a joint proposed jury charge, including all necessary instructions, or definitions, applicable to the specific issues of the case.  The court's preliminary and standard instructions may be found on the court's website (http://www.alnd.uscourts.gov/content/magistrate-

judge-john-h-england-iii) and need not be submitted to the court. Each requested instruction must be numbered with authority cited.  Counsel are to include all necessary instructions or definitions, specifically including (1) the prima facie elements of each cause of action and defense asserted; (2) legal definitions required by the jury; (3) items of damages; and (4) methods of calculation of damages.  Counsel are to use the 11th Circuit Pattern Jury Instructions, or appropriate state pattern jury instructions, as modified by case law or statutory amendments, wherever possible.  Any deviations must be identified and accompanied by legal authority for the proposed deviation. Where the parties cannot agree, counsel shall identify the item as disputed in bold type and label it to show which party is requesting the disputed language.  Accompanying each instruction shall be all authority or related materials upon which each party relies.  A copy shall be emailed in Word format to chambers at england_chambers@alnd.uscourts.gov.

      c.     If the verdict form will include special interrogatories for the jury to answer, counsel shall include such special interrogatories with their proposed jury instructions.

**9.    ADVISORY FOR LIMITING PERSONAL AND/OR CONFIDENTIAL INFORMATION IN TRANSCRIPTS AND EXHIBITS**

      The parties are required to follow the Court's Civil Administrative Procedures Manual (revised Feb. 2018).[2]  If evidence introduced at trial includes personal information, sealed documents, or documents and/or information subject to a protective order, the parties are directed to comply with sections II.I. and IV.C. of the Administrative Procedures Manual.  The foregoing also applies to the trial transcript, which will be public record.  If private and/or confidential information is mentioned in court, compliance with the Administrative Procedures Manual may require testimony to be stricken or partially redacted.

---

[2] Available at: http://www.alnd.uscourts.gov/sites/alnd/files/AL-N%20Civil%20Administrative%20Procedures%20Manual.Revision.02-2018.pdf

**10.    TRIAL DATE**

a.      This case is set for a jury trial at 8:00 a.m. on October 29, 2018, to be held at the Hugo L. Black U.S. Courthouse at 1729 Fifth Avenue North, Birmingham, AL 35203.[3]

b.      The trial of this matter is expected to last 5 days.

It is ORDERED that the above provisions be binding on all parties unless modified by further order for good cause shown.

DONE this 7th day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff has moved to set a trial date for October 9, 2018, primarily in opposition to a proposal to reset the trial for December.  (Doc. 113).  That motion is **DENIED**.  However, Plaintiff's counsel state they can be available for the October 29, 2018 trial date, and they confirmed their availability for this date at the September 7, 2018 conference.