# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES EDWARD BARBER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:15-cv-00997-JHE |
| | ) | |
| CORIZON HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The parties have filed motions in limine, (docs. 117[1] & 119), which are opposed, (docs. 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 131 & 132).[2]  Additionally, the parties have filed joint, unopposed motions in limine, (doc. 118), Defendants do not oppose one of Plaintiff's motions in limine, (doc. 130), and Plaintiff does not oppose one of Defendants' motions in limine, (doc. 132 at 1 n.1).

### I. Standard of Review

A motion in limine is designed to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted).  That said, it is generally a better practice to wait until trial to rule on objections that themselves depend on what facts will be developed at trial.  *See*

---

[1] Defendants Hugh Hood, Roy Roddam, and Jefferson Dunn have jointly filed their motions in limine.

[2] Both Plaintiff and Defendants request the court grant one of the adverse party's motions in limine, but in ways the adverse party likely did not entirely intend.  (*See* doc. 125; doc. 132 at 16-17).  The undersigned construes those motions as opposed.

*Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Thus, evidence should not be excluded unless it is "clearly inadmissible for any purpose." *Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007) (citation omitted).  *See also Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1504 (11th Cir. 1985).

Regardless of whether a motion is granted or denied, "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citation omitted).

## II. Analysis

The undersigned addresses each motion below, beginning with the unopposed motions.

### A. Unopposed Motions

#### 1. First Joint Motion (Doc. 118 at 1, ¶ 1)

The parties jointly request non-party witnesses be barred from the courtroom when they are not testifying.  They further request non-party witnesses who appear in the courtroom be barred from testifying, and that testifying non-party witnesses who remain in the courtroom following their testimony be barred from testifying in rebuttal.  This motion is **GRANTED** by agreement.

#### 2. Second Joint Motion (Doc. 118 at 1, ¶ 2)

The parties jointly request they be barred during *voir dire* from conducting background checks on prospective jurors using law enforcement databases.  Their agreement does not extend to using the Internet and publicly available databases to investigate jurors during *voir dire*.  This motion is **GRANTED** by agreement.

#### 3. Third Joint Motion (Doc. 118 at 1, ¶ 3)

The parties jointly request they be barred from presenting evidence of prior settlement offers or negotiation.  This motion is **GRANTED** by agreement.

**4. Fourth Joint Motion (Doc. 118 at 1, ¶ 4)**

The parties jointly request they be barred from arguing or presenting evidence that any party delayed the start of the trial or caused delay during the trial.  This motion is **GRANTED** by agreement.

**5. Fifth Joint Motion (Doc. 118 at 1, ¶ 5)**

The parties jointly request they be barred from arguing or presenting evidence that any non-expert party or witness has been paid to appear at trial for providing the statutorily required appearance fee.  This motion is **GRANTED** by agreement.

**6. Sixth Joint Motion (Doc. 118 at 1, ¶ 6)**

The parties jointly request they be barred from arguing or making reference to the number of attorneys representing any party and making disparaging remarks as to whether any party is represented by attorneys who come from "out of town."  This motion is **GRANTED** by agreement.

**7. Seventh Joint Motion (Doc. 118 at 1, ¶ 7)**

In this motion, Plaintiff agrees not to introduce evidence that an award against Defendants would be paid by insurance, provided that Defendants do not claim an inability to pay an award of punitive damages against them.  This motion is **GRANTED** by agreement.

**8. Eighth Joint Motion (Doc. 118 at 2, ¶ 8)**

The parties jointly request they be barred from employing the "Golden Rule" argument and asking jurors to stand in their shoes or place themselves in a party's position.  This motion is **GRANTED** by agreement.

**9. Ninth Joint Motion (Doc. 118 at 2, ¶ 9)**

In this motion, the parties agree not to inquire of the venire during *voir dire* whether any of them has been employed in a position involving evaluation of claims; whether any of them has

ever been employed as an insurance adjuster; whether any of them has ever been employed by an insurance company; or similar questioning.  Instead, they request all *voir dire* examination which touches upon the question of insurance, in any fashion, be conducted only by the Court, due to the concerns expressed in Federal Rule of Evidence 411.  This motion is **GRANTED** by agreement.

### 10. Tenth Joint Motion (Doc. 118 at 2, ¶ 10)

In this motion, Plaintiff agrees not to introduce evidence or testimony regarding claims against Defendants that were not pled in the complaint or any amendments to the complaint.  This motion is **GRANTED** by agreement.

### 11. Eleventh Joint Motion (Doc. 118 at 2, ¶ 11)

In this motion, the parties agree not to question any party about the nature, manner, and extent of any trial preparation activities conducted between the party and his attorneys, as they state this information is protected by attorney-client privilege.  This motion is **GRANTED** by agreement.

### 12. Twelfth Joint Motion (Doc. 118 at 2, ¶ 12)

In this motion, the parties agree not to introduce evidence, testimony, or argument that certain individuals were formerly defendants in this case, or to reference claims that are no longer part of this case.  This motion is **GRANTED** by agreement.

### 13. Defendants' Fourteenth Motion (Doc. 117 at 6, ¶ 14)

Defendants seek to bar Plaintiff, his witnesses, and his counsel from "making any references as to any lawsuits, claims, administrative actions, employment evaluations, audits, reprimands, write-ups, warnings, suspensions, or disciplinary actions taken against any of the defendants, defendants' co-employees or their employers, the ADOC and/or Corizon." (Doc. 117

at 6).  Plaintiff does not oppose this motion.  (Doc. 132 at 1 n.1).  The motion is **GRANTED** as unopposed.

### 14. Plaintiff's Twelfth Motion (Doc. 119 at 44-45)

In this motion, Plaintiff requests Defendants be barred from arguing that the State of Alabama should not have to pay for his hip replacement surgery and from referring to the jurors as "taxpayers."  Although Plaintiff states his counsel could not come to an agreement with defense counsel about the propriety of this argument, (*id.*), Defendants do not oppose this motion.  (Doc. 130).  Therefore, the motion is **GRANTED** as unopposed.

### B. Defendants' Opposed Motions

### 1. Defendants' First and Second Motions (Doc. 117 at 1-3, ¶ 1-2)

In their first motion, Defendants seek to bar Plaintiff from testifying about "what other unidentified, undisclosed, or non-witness medical providers may have said" regarding his medical condition or treatment, arguing it is barred by Rules[3] 802 and 803 as impermissible hearsay.  (*Id.*).  In their second motion, Defendants attempt to bar Plaintiff from testifying about "what he was told by any non-party treating physicians, or his 'understanding' after speaking with said non-party treating physicians."  (*Id.* at 1-3, ¶ 2).  In the context of a broader argument about numerous motions, Plaintiff argues both of these motions are impermissibly vague and overbroad and also fail to account for hearsay exceptions.  (Doc. 132 at 2-4).

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the

---

[3] Unless otherwise indicated, references to the "Rules" or a specific "Rule" in this order refer to the Federal Rules of Evidence.

statement." FED. R. EVID. 801(c).  Unless a statute, rule of evidence, or rule prescribed by the Supreme Court permits its admissibility, hearsay is not admissible.  FED. R. EVID. 802.

As to the first part of Plaintiff's argument, it is true that "[a] court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Coyle v. Dakko Prop. Mgmt., Inc.*, No. CV-07-S-0583-S, 2011 WL 13228177, at *2 (N.D. Ala. Jan. 4, 2011) (citation and internal quotation marks omitted).  However, these motions are sufficiently specific.  Plaintiff argues Defendants "do not identify with specificity any witness whose testimony they seek to limit," but the motions clearly seek to prohibit Plaintiff's own testimony about these statements.  Further, they point to defined categories of evidence that are facially hearsay: Plaintiff's testimony about out-of-court statements made (1) by medical providers that have not been identified to Defendants and are not witnesses and (2) by Plaintiff's treating physicians.

Turning to the second portion of Plaintiff's argument, Plaintiff argues some of the testimony that would be captured by these motions is within the hearsay exception for statements made for the purpose of medical diagnosis or treatment.  Under that exception, a statement is admissible notwithstanding it is hearsay if it "(A) is made for — and is reasonably pertinent to — medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."  FED. R. EVID. 803(4).  The problem with Plaintiff's argument is that the hearsay exception applies to a patient's statements in seeking medical care, not a physician's statements in providing that care.  *See* FED. R. EVID. 803 advisory committee's notes (noting a statement "made to a physician for purposes of diagnosis and treatment" contains a guarantee of trustworthiness "in view of the patient's strong motivation to be truthful.") (emphasis added).  *See also Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1274 (8th Cir. 1990) ("to fall within the exception, the statement must be obtained from the person seeking

treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent."); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996) ("The Rule excepts statements made by a person seeking medical attention to the person providing that attention. Rule 803(4) does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the patient."); *Field v. Trigg County Hospital, Inc.*, 386 F.3d 729, 735 (6th Cir. 2004) (citing *White v. Illinois,* 502 U.S. 346, 355–56 (1992)) ("The rationale behind this exception is that statements made by an individual to physicians for purposes of diagnosis or treatment are considered exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care.") (emphasis added).

Plaintiff cites *United States v. Belfast*, 611 F.3d 783, 818-19 (11th Cir. 2010), for the proposition that a treating physician's statement may be admissible under Rule 803(4) if it otherwise falls within the hearsay exception.  In *Belfast*, a case brought under the Torture Act, the Eleventh Circuit held the district court did not err by failing to redact portions of the victims' medical records including the terms "torture" and "abuse"; they were admissible under Rule 803(4) because they represent statements of causation, not fault.  *Id.*  The court identified the challenged statements only as "statements by the medical professionals" that the victims' wounds were the result of abuse or torture.  The declarant of these statements — and thus the precise application of Rule 803(4) — is not obvious, and it is certainly possible to read this as an endorsement of Plaintiff's theory that he may, consistent with the exception, testify about what his physicians told him.  However, a different, equally plausible reading of the court's ambiguous statement — that the victims' statements about torture and abuse were set out by medical professionals in the records, and the victims are the declarants — does not require the court to jettison the conventional

7

understanding of the exception, reflected in the advisory committee's notes and the holdings of every circuit court that has squarely confronted the issue.  Notably, the case the Eleventh Circuit cites for the admissibility of the statements by "medical professionals," *United States v. Iron Thunder*, 714 F.2d 765 (8th Cir. 1983), concerns a doctor's testimony about what a patient told him, rather than the patient's testimony about what a doctor told her.  *Id.* at 772-73.  And the only subsequent Eleventh Circuit case to cite *Belfast* for its discussion of Rule 803(4) cites it for the admissibility of records containing a victim's statement to a nurse that she had been raped.  *See United States v. Williams*, 578 F. App'x 872, 876 (11th Cir. 2014).  Conversely, the Eleventh Circuit has explicitly (albeit in an unpublished decision) held a plaintiff's testimony about his physician's assessment of his conditions was properly excluded as hearsay.  *See Hodge v. Sec'y, Fla. Dep't of Corr.*, 464 F. App'x 810, 813 (11th Cir. 2012).

Defendants' first and second motions are **GRANTED**.

### 2. Defendants' Third Motion (Doc. 117 at 3, ¶ 3)

Defendants' third motion requests the exclusion of "lay testimony concerning any anticipated future medical treatment to be incurred by the plaintiff . . . in the absence of proper medical testimony to establish the reasonableness and necessity of any such anticipated future medical treatment."  (*Id.*).  Plaintiff again argues this is vague and overbroad, (doc. 132 at 2), and that it impermissibly attempts to narrow the scope of lay witness testimony, (*id.* at 4-6).

Under Rule 701, a lay witness may provide an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701.  Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and  (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Defendants' motion seeks to bar lay testimony that a particular treatment would effectively treat Plaintiff's arthritis.  This evidence is within the scope of Rule 702 and is not proper lay testimony.  Therefore, the motion is **GRANTED**.

**3. Defendants' Fourth Motion (Doc. 117 at 3-4, ¶ 4)**

Defendants' fourth motion seeks to bar Plaintiff and his witnesses from "addressing or raising or referring to the fact that any other inmate incarcerated at any time with the Alabama Department of Corrections has received or been recommended to receive total hip replacement surgery," as they contend it is irrelevant and, even if relevant, unduly prejudicial.  (*Id.*).  Plaintiff argues neither ground supports exclusion of this evidence.  (Doc. 132 at 8-10).

Defendants do not explain how admitting evidence of other prisoners' hip replacements would be irrelevant or prejudicial.  Plaintiff illustrates one potentially relevant use of this evidence: it would "establish[] that Defendants are on notice that the type of end-stage degenerative joint disease that Mr. Barber has requires hip replacement surgery," which would go to Defendants' subjective knowledge of the risk of failing to provide a hip replacement in Plaintiff's case.  (*Id.* at 9).  The undersigned agrees the evidence would be relevant for this purpose.  In the absence of an argument from Defendants as to how the evidence would prejudice them, their motion is **DENIED**.

### 4. Defendants' Fifth Motion (Doc. 117 at 4, ¶ 5)

In their fifth motion, Defendants seek to bar lay testimony or argument that Plaintiff's injuries are permanent or that he "continues to suffer from any pain, complications, limited range of motion, or other problems related" to his arthritis. (*Id*.). As with Defendants' third motion, Plaintiff argues the request attempts to bar appropriate lay testimony; specific to this motion, Plaintiff also contends this impermissibly seeks to bar Plaintiff's testimony about his own subjective perceptions of his pain. (Doc. 132 at 4-8). Plaintiff also notes this motion attempts, without any explanation, to exclude argument about his injuries. (*Id.* at 7-8).

The undersigned agrees with Plaintiff that there are broad categories of admissible evidence that this motion would exclude. While Plaintiff may not offer a diagnosis of his injury consistent with the rule, he may still testify about his subjective perception of pain. *See Walker v. Super 8 Worldwide, Inc.*, No. 608CV552ORL18TBS, 2012 WL 13102079, at *2 (M.D. Fla. Aug. 22, 2012). Nor would it be appropriate to limit Plaintiff's counsel's ability to make the inference — assuming the evidence Plaintiff adduces at trial supports it — that Plaintiff's pain will continue absent surgical intervention. *Cordell v. Pac. Indem. Co.*, 380 F. App'x 942, 945 (11th Cir. 2010). Therefore, the motion is **DENIED**, with leave to raise this objection at trial.

### 5. Defendants' Sixth Motion (Doc. 117 at 4, ¶ 6)

Defendants' sixth motion attempts to bar lay testimony "as to a percentage of permanent impairment given to the plaintiff." (*Id*.). Plaintiff opposes this on the broad principle he opposes several previous motions — that it seeks to exclude proper lay opinions under Rule 701, which "apparently includes testimony that Plaintiff cannot engage in certain activities of daily living, like sitting or lying down, without excruciating pain." (Doc. 132 at 4-7). Defendants' motion appears substantially narrower than Plaintiff's construction, and the undersigned reads it as seeking only

to exclude lay testimony expressing Plaintiff's disability as a percentage — e.g., that Plaintiff is 100% disabled. This is not an appropriate category of lay testimony, and, therefore, the motion is **GRANTED**. To the extent Defendants seek the broader reading Plaintiff attributes to them, any such objections may be addressed at trial.

### 6. Defendants' Seventh Motion (Doc. 117 at 4, ¶ 7)

This motion seeks to prohibit lay testimony concerning "permanent restrictions and/or complications arising out of [Plaintiff's] arthritis in his left hip," which would require an expert opinion. (*Id.*). Plaintiff opposes it on approximately the same basis he opposes Defendants' sixth motion. (Doc. 132 at 7-8). As with Plaintiff's response to the sixth motion, he has adopted a reading of the motion that seems broader than what Defendants intend. Plaintiff indicates he should be able to testify about "the fact that the treatment he is receiving continues to offer no relief for [his] symptoms," (*id.* at 8), but this is not testimony regarding whether his pain or restrictions are permanent. Therefore, the motion is **GRANTED**, with the same caveat that Defendants' efforts to expand this motion beyond its strict terms may be addressed at trial.

### 7. Defendants' Eighth Motion (Doc. 117 at 4-5, ¶ 8)

Defendants seek to bar Plaintiff's counsel from arguing that the jury should "send a message," on the basis that it would be inflammatory, improper, and prejudicial under Rules 401, 402, and 403.[4] (*Id.*). Plaintiff responds he is entitled to do so because he intends to ask the jury

---

[4] Under Rules 401 and 402, relevant evidence — evidence which "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . is of consequence in determining the action" — admissible unless prohibited under the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the United States Supreme Court. FED R. EVID. 401 & 402. Irrelevant evidence is inadmissible. FED. R EVID. 402. Otherwise relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of

to award punitive damages.  (Doc. 132 at 10-11).  As Plaintiff points out, (*id.* at 10), the Eleventh Circuit's Pattern Jury Instructions explicitly contemplate that the jury will be instructed that "the law allows you . . . to award [Plaintiff] punitive damages as a punishment for [Defendants] and as a deterrent to others."  Pattern Civ. Jury Instr. 11th Cir. 5.13 (2018).  There is no meaningful distinction between asking for an award "as a deterrent to others" and asking for an award to "send a message."  *See Settlegoode v. Portland Pub. Schools*, 371 F.3d 503, 519 (9th Cir. 2004) (discussion of deterrent effect "certainly legitimate when punitive damages are at stake"); *Snyder v. Bazargani*, 241 F. App'x 20, 23 (3d Cir. 2007) ("send a message" appropriate in action seeking punitive damages); *The Emery–Waterhouse Co. v. Rhode Island Hospital Trust National Bank*, 757 F.2d 399, 410 (1st Cir. 1985) (same).  Therefore, this motion is **DENIED**.

### 8. Defendants' Ninth Motion (Doc. 117 at 5, ¶ 9)

Defendants' ninth motion requests "[t]hat plaintiff, plaintiff's counsel, or any other witness be prohibited from testifying as to what they were told by any other witness at trial," on the basis that it would be hearsay.  (*Id.*).  Plaintiff opposes this as an overbroad attempt to exclude hearsay, regardless of whether it falls into an exception to Rule 802.  (Doc. 132 at 2-4).  Consistent with Plaintiff's argument, Defendants' motion places no limits at all on the hearsay evidence they seek to bar.  Therefore, the motion is overbroad and is **DENIED**.  Defendants may object at trial to specific hearsay testimony.

---

one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.

### 9. Defendants' Tenth Motion (Doc. 117 at 5, ¶ 10)

This motion seeks to exclude "any lay testimony, evidence, argument, or implication that plaintiff's alleged injury caused him to become 'disabled,'" which is a matter for expert opinion. (*Id.*).  Plaintiff argues this impermissibly restricts his ability to use the word in a lay context and describe his abilities of daily living.  (Doc. 132 at 6-8).  Regardless of whether the word has permissible lay uses, its common meaning implies a medical judgment. Further, contrary to Plaintiff's argument, restricting the use of the word "disabled" does not appear to impinge on Plaintiff's ability to describe what he can or cannot do without pain.  Therefore, Defendants' motion is **GRANTED**.

### 10. Defendants' Eleventh Motion (Doc. 117 at 5, ¶ 11)

Defendants' eleventh motion requests "[t]hat testimony be excluded as to any claim that plaintiff will need future surgery for the left hip arthritis."  (*Id.*).  They state there is "no medical testimony stated to a reasonable degree of medical certainty that [Plaintiff] will require any future surgery or a procedure as a result of the arthritis," and consequently no evidence should be presented that supports this; it would require an expert opinion.  (*Id.*).  Plaintiff points out that his expert will testify to the necessity of the surgery, and that Dr. Powell's records support it as well. (Doc. 132 at 5).  He also contends he is entitled to describe the fact that his pain and impairment have not been relieved by the current treatments.  (*Id.* at 5-6).  Defendants' motion does not appear to distinguish between lay and expert testimony, but, presuming it applies to lay opinion only,[5] it does not follow that the testimony Plaintiff identifies would be barred by granting the motion.

---

[5] Any other reading of the motion would imply that unspecified expert testimony about the necessity of surgery should excluded because it would require an expert opinion, which begs the question.

13

Therefore, the motion is **GRANTED** to the extent that lay testimony that Plaintiff requires surgery to treat his arthritis is excluded.

**11. Defendants' Twelfth and Thirteenth Motions (Doc. 117 at 5-6, ¶ 12-13)**

In their twelfth motion, Defendants seek to exclude "any references to Hugh Hood, M.D., discontinuing Barber's narcotics and/or not providing Barber with the pain medications he sought during his incarceration." (*Id.* at 5-6, ¶ 12). Defendants then refer to the memorandum opinion dismissing Plaintiff's deliberate indifference claims as they relate to discontinuing the pain medications. (*Id.*) (citing doc. 82). Defendants contend this ought to foreclose "any issues related to Barber's pain medications prescribed." (*Id.*). Defendants' thirteenth motion seeks to bar similar references to Defendant Dr. Roy Roddam failing to provide medications to Plaintiff, as that claim is not pled in the complaint against Dr. Roddam. (*Id.* at 6, ¶ 13). Plaintiff indicates he intends to introduce no evidence related to the dismissed claims, but that defense counsel confirmed to his counsel that this is intended to prohibit "*any reference* whatsoever to Mr. Barber's pain medication." (Doc. 132 at 11-12). Plaintiff objects to the latter, but not the former. (*Id.*).

As Plaintiff notes, (*id.*), he may prove deliberate indifference by showing that Defendants opted for "an easier and less efficacious course of treatment," rather than one that passes Eighth Amendment muster. (*See* doc. 82 at 23) (citing *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Whether or not the pain medication provided to Plaintiff is effective (a component of this method of proof) is a separate question from whether Defendants were deliberately indifferent by failing to provide Plaintiff with pain medication or by discontinuing that medication. Therefore, the motions are **GRANTED IN PART** to the extent that Plaintiff is barred from offering evidence or argument indicating that the denial or discontinuation of his pain medication was an act of deliberate indifference, but **DENIED** to the extent Plaintiff may reference pain medication in other

14

contexts; specifically, that they do not relieve the pain associated with his end-stage arthritis. To the extent Defendants believe a reference to pain medication runs afoul of this restriction, they may object at trial.

### 12. Defendants' Fifteenth and Sixteenth Motions (Doc. 17 at 6-7, ¶¶ 15-16)

Defendants' fifteenth and sixteenth motions seek to bar Plaintiff's witnesses "from addressing or raising or referring to any issues with regard to" the following categories of evidence: (1) "any of their medical and/or nursing treatment or their dissatisfaction thereof," (*id.* at 6-7, ¶ 15); (2) "their health care during their incarceration," (*id.* at 7, ¶ 16). For both, Defendants state this evidence would be irrelevant, confusing, and misleading, and therefore inadmissible under Rules 402 and 403. (*Id.*). Plaintiff notes neither of these motions contains any reasoning or substantive discussion — for example, Defendants do not actually state how the evidence is irrelevant, confusing or misleading — and argues the motions are overbroad. (Doc. 132 at 12-14). Plaintiff also contends this evidence may be relevant to establish Defendants' subjective mental intent. (*Id.* at 13).

Plaintiff's latter contention is founded on Rule 404(b)(2), which allows evidence related to prior bad acts — which are inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1) — to be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). However, the evidence Defendants identify does not relate to their alleged intent to consciously disregard Plaintiff's medical needs. Thus, this evidence does not pass through the avenue Plaintiff identifies. In any event, and although Defendants' explanation is lacking, the undersigned agrees that, even if minimally relevant, permitting such evidence would confusingly and prejudicially widen the

evidentiary focus from Defendants' medical care of Plaintiff to Defendants' care of prisoners in general.  Therefore, the undersigned concludes the evidence is impermissible under Rule 403, and Defendants' fifteenth and sixteenth motions are **GRANTED**.

### 13. Defendants' Seventeenth and Eighteenth Motions (Doc. 117 at 7-9, ¶¶ 17 & 18)

Defendants' eighteenth and nineteenth motions seek to bar Plaintiff and his witnesses from "from addressing or raising or referring to any issues with regard to" the following categories of evidence: (1) "any conditions within the Donaldson Correctional Facility (or any other correctional facility) or any dissatisfaction thereof by Barber or any of his witnesses, or any individual . . . [including] the physical conditions of the Donaldson Correctional Facility (or any other correctional facility), including bathroom and bathing facilities, living facilities and/or exercise facilities . . . meals, uniforms and/or medical care, or any other issues related to the incarceration of individuals, provided to inmates at Donaldson Correctional Facility, (or any other correctional facility), including use of force, prevalence of violence, and investigations or lawsuits as to any condition at Donaldson Correctional Facility, (or any other correctional facility), by any individual or group . . . [and] any reference to any media account or social media description of the same," (*id.* at 7-8, ¶ 17); and (2) "any ADOC[6] officer and/or employee of the ADOC – specifically testimony regarding the dissatisfaction of their treatment by ADOC personnel by James E. Barber, Jr. or any of his witnesses regarding any ADOC officer during their incarceration with the ADOC . . . [including] testimony regarding all prior and subsequent acts of the ADOC and its employees outside of the specific claims alleged by James E. Barber, Jr. in his complaint," (*id.* at 8-9, ¶ 18). Again, for both motions, Defendants state this evidence would be irrelevant, confusing, and

---

[6] "ADOC" refers to the Alabama Department of Corrections.

misleading, and therefore inadmissible under Rules 402 and 403. (*Id.*). Plaintiff offers the same objections that these motions are overbroad and conclusory as he does to the fifteenth and sixteenth motions. (Doc. 132 at 12-14).

Unlike Defendants' fifteenth and sixteenth motions, these motions are truly overbroad. Plaintiff points to multiple types of evidence that are clearly admissible and nonprejudicial that fall within their scope: Plaintiff's testimony that the sheets he is provided with and the metal slab on which he sleeps do not provide him relief from the pain in his hip, and Plaintiff's witnesses observations of Plaintiff's activities, which would describe the prison conditions. (Doc. 132 at 14). Consequently, these motions are **DENIED**, with leave to object at trial to specific testimony about conditions that are not relevant to Plaintiff's claims.

### 14. Defendants' Nineteenth Motion (Doc. 117 at 9-10, ¶ 19)

This motion seeks to prohibit testimony and argument regarding "any issues related to medical invoices or bills or payments related to James E. Barber, Jr.'s medical treatment" due to the fact the ADOC is responsible for payment, not Drs. Hood or Roddam. (*Id.*). Consequently, Defendants argue this evidence is irrelevant, and in any event should be excluded under Rule 403. (*Id.*). A note at the end of this motion indicates Defendants have no objection for issues directly related to Barber's left hip, with the exception of co-pays. (*Id.*). Plaintiff opposes this on the basis that, regardless of who required Plaintiff to pay the co-pays, Defendants' alleged deliberate indifference is what required him to continue paying them. (Doc. 132 at 15-16). Plaintiff analogizes this case to a car wreck, in which a defendant could not exclude evidence of the cost of medical care simply because it was paid to a hospital. (*Id.*). Defendants offer no reason why co-pays would not be recoverable, regardless of who ultimately foots the bill for Plaintiff's medical care. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (compensatory

damages in § 1983 cases include out-of-pocket losses).   Therefore, Defendants' motion is **DENIED**.

### 15. Defendants' Twentieth Motion (Doc. 117 at 10-21, ¶ 20)

Defendants' twentieth motion relates to witnesses they say Plaintiff has failed to adequately disclose under Fed. R. Civ. P. 26, which requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]"   FED. R. CIV. P. 26(a)(1)(A)(i). Defendants contend a wide swath of Plaintiff's witnesses were unidentifiable — some had no first names, addresses, or telephone numbers, which meant they "might as well have not been listed at all." (Doc. 117 at 10-11).   Plaintiff does not oppose the motion, but states that this restriction should apply equally; in his third motion in limine, discussed further below, he has also moved to disqualify nine witnesses Defendants did not disclose in their Rule 26 disclosures but instead disclosed for the first time in their trial witness list. (Doc. 132 at 16-17; doc. 119 at 19-23).

When a party fails to disclose a witness under Fed. R. Civ. P. 26, "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).   Absent a showing of justification or harmlessness, exclusion is "automatic and mandatory." *Battle v. DirecTV, L.L.C.*, No. 2:14-CV-02007-AKK, 2017 WL 4076205, at *10 (N.D. Ala. Sept. 14, 2017) (quoting *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013).   "The burden is on the party facing the [discovery] sanctions . . . to make the requisite showing" of justification or harmlessness." *Andazola v. Logan's Roadhouse, Inc.*, No. CV-10-S-316-NW, 2013 WL 2106815,

18

at *2 (N.D. Ala. May 10, 2013) (quoting *Abrams v. Ciba Specialty Chemicals Corp.,* No. 08–0068–WS–B, 2010 WL 779283, *29 (S.D.Ala. Mar. 2, 2010), and collecting cases).

Plaintiff does not attempt to justify the nondisclosure.  Therefore, Defendants' motion is **GRANTED,** and Plaintiff is barred from using any of the following witnesses to supply evidence at trial: Nurse Rogers, Nurse Thomas, Nurse Smith, Nurse Mitchell, Nurse Gwen, Officer Martin, Officer Smith, Larry Stewart, Justin Weiss, Dr. Reono Bertagnolli, Dr. Jason Liu, and Dr. Uchendu Azodo.[7]  To the extent Plaintiff argues the bar should be reciprocal, that argument is discussed below.

### C. Plaintiff's Opposed Motions

### 1. Plaintiff's First Motion (Doc. 119 at 2-8)

Plaintiff's first motion seeks to bar evidence of the nature of his conviction (murder) and the sentence he received (death).  (*Id.*).  Plaintiff argues this evidence would be unfairly prejudicial, given that the nature of the crime and the sentence have little effect on the veracity of his testimony beyond what any other felony would entail.  (*Id.*).  In opposition, Defendants contend Plaintiff is the one who based his claims — and survived summary judgment due to —the fact he is on death row, and that Rule 609 specifically allows them to use the crime's nature and sentence to attack Plaintiff's credibility.  (Doc. 120 at 2-3).

---

[7] Plaintiff notes that, while Defendants now identify other witnesses about whom they lacked information, they raised no issues with them during discovery.  (Doc. 132 at 16 n.5).  Defendants generally state that some individuals' identities "could not be determined by the lack of information provided by [Plaintiff]," but never specifically identify which witnesses these are.  Although this could refer to the witnesses Defendants identified in their objections to Plaintiff's pretrial disclosures, (doc. 107), the undersigned will not exclude witnesses based on an assumption.  Therefore, the undersigned grants Defendants' motion to the extent it specifically identifies witnesses Defendants intend it to apply to — the undisclosed witnesses who remain on Plaintiff's witness list.

Rule 609 governs the use of a witness's criminal conviction to attack the witness's credibility. For felonies[8] whose elements do not involve proving a dishonest act or false statement, that Rule provides that evidence of a criminal conviction:

> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]

FED. R. EVID. 609(a)(1). The Eleventh Circuit has held "Rule 609 requires that evidence of prior convictions of a non-defendant witness be admitted if (1) the convictions are for crimes punishable by death or imprisonment in excess of one year, (2) the convictions are less than ten years old, and (3) the evidence is being used to attack the witness' credibility." *United States v. Crumbly*, 215 F. App'x 983, 989 (11th Cir. 2007) (citing *United States v. Burston,* 159 F.3d 1328, 1335 (11th Cir. 1998)). "Prior-conviction evidence governed by Rule 609(a)(1) . . . is still subject to Rule 403's balancing test . . . ." *Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 816 (11th Cir. 2017). Although the Rule "'requires a district court to admit evidence of the nature and number of a non-defendant witness' prior felony convictions' . . . such information can be excluded in a proper case under Rule 403." *McCorvey v. Alabama River Cellulose, LLC*, No. CIV.A. 13-0118-WS-N, 2014 WL 5528219, at *3 (S.D. Ala. Nov. 3, 2014) (citing *Burston,* 159 F.3d 1336).

---

[8] "The definition of which crimes are admissible under Rule 609, namely, crimes 'punishable by death or imprisonment in excess of one year,' mirrors the traditional definition of a felony." *United States v. Burston*, 159 F.3d 1328, 1336 n.13 (11th Cir. 1998) (citing FED. R. EVID. 609 advisory committee's note).

The broad proposition Defendants advance — that the Rule allows for the introduction of Plaintiff's conviction and sentence, full stop — is inconsistent with the text of the Rule and with caselaw.  As discussed above, the Rule is cabined by Rule 403, which Defendants do not address at all.  Therefore, the undersigned must determine whether the probative value of some or all of the evidence surrounding the conviction is substantially outweighed by the prejudice to Plaintiff if it is admitted.  In this case, the beginning of the inquiry is not the conviction itself, but the death sentence.  Several things counsel against permitting evidence of Plaintiff's death sentence.  First, as Plaintiff notes, by suggesting he is one of the worst offenders under the law, the jury may believe he is less deserving of constitutionally adequate medical care.  *See Moore v. Parker*, 2016 WL 6871264, at *2-3 (W.D. Ky. Nov. 21, 2016) (excluding references to plaintiff's death row status in § 1983 excessive force case).  That danger is particularly acute in this case, where the jury may be tempted to conclude the fact Plaintiff will someday be executed by the state means paying for a hip replacement would waste the state's limited funds.  Second, it invites the jurors to decide the case based on their perceptions of capital punishment, not the facts.  This would lead to the confusion Rule 403 is designed in part to prevent.  Finally, while there is probative value to evidence of the sentence to the extent it indicates grave societal disapproval for Plaintiff's crime, it adds little to the calculus of Plaintiff's credibility beyond any other conviction for murder (discussed below).  Balancing that probative value against the prejudice to Plaintiff, the undersigned concludes Plaintiff's death sentence should be excluded.[9]

---

[9] Defendants argue Plaintiff's status should otherwise be admissible because Plaintiff's complaint and briefing on Defendants' motion for summary judgment relied on the fact Plaintiff is on death row to posit Defendants' motive for denying Plaintiff a hip replacement.  Plaintiff is correct that he is not bound to track those arguments at trial.  Summary judgment is an evidentiary hurdle.  Although evidence exists in the record from which a reasonable jury could find

Having concluded the sentence should not be admitted under Rule 403, the next question is what to do with the specific nature of Plaintiff's conviction.  "Crimes involving dishonesty or false statement are often more probative of the witness's lack of credibility than even more serious crimes involving violence."  *McCorvey v. Alabama River Cellulose, LLC*, No. CIV.A. 13-0118-WS-N, 2014 WL 5528219, at *2 (S.D. Ala. Nov. 3, 2014) (quoting *United States v. Cathey*, 591 F.2d 268, 276 (5th Cir. 1979))[10].  Murder, even capital murder, is not a crime of dishonesty; while the undersigned is mindful that "[e]vidence of a murder conviction says something far different about a witness' credibility than evidence of a conviction for a minor drug offense, although both may constitute a prior felony conviction," *Burston*, 159 F.3d at1335, the probative value of the nature of Plaintiff's conviction is not so overwhelming it would completely erode his credibility.  Additionally, considering that some of the central facts of this case occur in a segregated portion of the prison in which Plaintiff, a murderer, is surrounded by other murderers (e.g., the other death row witnesses, whose convictions Defendants also wish to use as impeachment evidence),  jurors may be able to deduce that Plaintiff's environment is in fact death row, reinstating the prejudice that concealing Plaintiff's sentence is intended to mitigate.  On the whole, the undersigned

_____

Defendants' denial of Plaintiff's hip replacement violated the Eighth Amendment (which is what the undersigned found in denying summary judgment as to that claim), Plaintiff is not required to present all that evidence to the jury. *Cf. Howell v. Burden*, 12 F.3d 190, 192 n.2 (11th Cir. 1994) (distinguishing between the summary judgment record and the trial record).  If Defendants believe no reasonable jury could find for Plaintiff absent that evidence, it accrues to their advantage if Plaintiff does not present it; they have an opportunity to raise that argument in a motion for judgment as a matter of law or after an adverse verdict.  And if Plaintiff presents the evidence, Defendants may always request the undersigned reconsider this ruling.

[10] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

concludes the probative value of Plaintiff's murder conviction is substantially outweighed by the prejudice it would create.

An alternative exists to simply excluding that Plaintiff was convicted of a felony. Courts have occasionally "sanitized" convictions under circumstances such as this one, omitting information from them to mitigate prejudice to a litigant. For example, in *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009), the court upheld the trial court's decision to limit the description of the plaintiff's conviction for "sale by a felon of firearms without a federal license" to "sale of firearms without a federal license" — the previous felony had been committed more than ten years ago, and the trial court found that the fact of the inadmissible predicate conviction was outweighed by the prejudicial effect if the jury were told of it permitted to speculate what it was. And in *McCorvey* 2014 WL 5528219, (S.D. Ala. Nov. 3, 2014), the court excluded evidence of a witness's second-degree rape conviction beyond that he was convicted of a felony, the date on which the conviction occurred, and the year in which the witness was released. It reasoned that the nature of the conviction added little to the assessment of the witness's credibility and carried "a great deal of pointless prejudice" were it admitted. *Id.* at *2. This is an appropriate case for sanitization, especially since disclosing the date of Plaintiff's conviction — December 17, 2003[11] — will indicate he was convicted of a felony serious enough to warrant incarceration for at least fifteen years.

Plaintiff's first motion is **GRANTED**. Defendants may only present evidence that Plaintiff was convicted of a felony, the number of felonies of which Plaintiff was convicted, and the date

---

[11] *See* https://v2.alacourt.com, *State of Alabama v. James Edward Barber*, Case No. 47-CC-2002-001794.00.

of Plaintiff's conviction.   However, they may not offer evidence of the nature of Plaintiff's conviction or the sentence he received.

### 2. Plaintiff's Second Motion (Doc. 119 at 9-17)

Plaintiff's second motion seeks to bar a number of types of evidence related to the medical opinions of Defendant Drs. Hood and Roddam, former defendant Nurse Practitioner James Butler, and non-party Dr. Thomas Powell.  First, because none of these defendants were identified as an expert under Fed. R. Civ. P. 26(a)(2)(B) and none offered an expert report under that section, Plaintiff requests their testimony be limited to opinions formed from the personal knowledge they obtained while treating Plaintiff.  (*Id.* at 10-13).  Second, Plaintiff seeks to restrict each from offering opinions on the standard of care.  (*Id.* at 13-14).  Third, Plaintiff attempts to restrict their ability to testify that they were not deliberately indifferent.  (*Id.* at 14-16).  Finally, Plaintiff seeks to bar references to Drs. Hood and Roddam as "experts."  (*Id.* at 16-17).

### a.  Opinion Evidence Beyond Personal Knowledge

In the first category, Plaintiff specifically objects to four types of opinion evidence to be offered by these witnesses: (1) "abstract opinions about 'the standard of care applicable to medical doctors [or nurse practitioners] in the state of Alabama'"; (2) "opinions about the quality of medical care provided by other staff, and the intentions of other medical staff"; (3) "any opinion by Dr. Powell about the appropriate timing of hip replacement surgery"; and (4) "an opinion about whether Plaintiff's injuries were caused by a particular policy."  (*Id.* at 10-13).  All of these objections challenge whether Defendants were required to provide a report under Fed. R. Civ. P. 26(a)(2)(B), or whether the less expansive report required under Fed. R. Civ. P. 26(a)(2)(C) suffices (although Plaintiff also raises the standard of care testimony separately; it is discussed further below).  Defendants disclosed Dr. Hood, Dr. Roddam, CRNP Butler, and Dr. Powell as

24

non-retained experts on December 12, 2016.  (Doc. 119-2 at 2-3).  Each provided a report pursuant

to Fed. R. Civ. P. 26(a)(2)(C).  (*Id.* at 5-27).

In *Sweat v. United States*, the court summarized the standard applicable to expert witnesses:

Rule 26(a)(2) governs disclosures by expert witnesses. "[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). The rule distinguishes between experts who must provide a written report and those who do not need to provide a written report.

A witness who "is one retained or specially employed to provide expert testimony in the case" must provide a written report, prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). The report must contain a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case. *Id.*

Witnesses who were not retained or specially employed to provide expert testimony do not need to provide a written report, but the expert disclosure must include the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). This rule, which was added in 2010, "is considerably less extensive than the report required by Rule 26(a)(2)(B)" and "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id.* (Advisory Committee Notes to 2010 Amendment).

The Advisory Committee further noted that:

A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include <u>physicians or other health care professionals</u> and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

25

*Id.* (emphasis added).

*Sweat v. United States*, No. 8:14-CV-888-T-17JSS, 2015 WL 8270434, at *1–2 (M.D. Fla. Dec. 8, 2015).  Whether an expert is a "retained" or a "non-retained" expert depends on the substance of the opinions that the expert intends to offer.  *In re Denture Cream Products Liability Litigation*, 2012 WL 5199597, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012).  An expert who offers opinions reached during the course of treatment falls under Fed. R. Civ. P. 26(a)(2)(C), *Sweat*, 2015 WL 8270434 at *2; by contrast, an expert whose opinions extend beyond those reached during the course of treatment fall under Fed. R. Civ. P. 26(a)(2)(B), *Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493 at *10 (N.D. Ga. Mar. 21, 2013).

Even assuming Defendants were required to comply with Fed. R. Civ. P. 26(a)(2)(B) in order for these witnesses to offer the opinions their disclosures indicate they will provide,[12] as discussed above, exclusion is not warranted if the inadequate disclosure was substantially justified or was harmless.  FED. R. CIV. P. 37(c)(1).  Although Plaintiff briefly argues permitting opinions from these witnesses on the four topics listed above would "inflict the utmost prejudice" on him, (doc. 119 at 13 n.1), he never indicates why this is the case.  Conversely, Defendants point to their disclosures under Fed. R. Civ. P. 26(a)(2)(C) and the fact that each witness was deposed on substantially the topics Plaintiff objects to, (doc. 121 at 5), both of which point to the harmlessness of failing to provide a Fed. R. Civ. P. 26(a)(2)(B) report.

---

[12] Plaintiff's argument Dr. Powell intends to offer an opinion regarding the timing of Plaintiff's hip replacement surgery should have been provided in a Fed. R. Civ. P. 26(a)(2)(B) report, (doc. 119 at 12-13), is particularly suspect.  According to Defendants, Dr. Powell has continued to treat Plaintiff by examining Plaintiff's X-rays.  This would clearly qualify as an opinion derived from his treatment of the plaintiff in this   case.

One of the cases repeatedly cited by Plaintiff, *Kondragunta*, 2013 WL 1189493, is instructive.  In *Kondragunta*, the plaintiff disclosed a number of treating physician witnesses under Fed. R. Civ. P. 26(a)(2)(C), but the treating physicians' reports did not fully comply with the rule because they did not disclose the facts and opinions on which they intended to base their testimony. *Id.* at *6.  At summary judgment, the plaintiff attempted to offer affidavits from the treating physicians, and the defendants moved to strike.  *Id.* at *2-3.  The court examined whether the plaintiff's deficient disclosures was substantially justified or harmless under Fed. R. Civ. P. 37(c)(1) using a five-factor test commonly used in the Northern District of Georgia, which looks at "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* at *7-8.  The court concluded this test did not require exclusion of the expert reports.  On the first factor, the court found there had been no surprise to defendants at all because the plaintiff's disclosures, while inadequate, specifically identified the areas on which the treating physicians' affidavits offered opinion evidence. *Id.* at *8.  While the court also determined that the defendants had a right to complain about the inadequacy of the disclosures, it held that, under the second factor, the defendants "had the ability to complain, and thereby cure this surprise, prior to the expiration of expert discovery, by advising plaintiff that his disclosures did not comply with the rule and by requesting more specific disclosures." *Id.*  Instead, however, they "laid in wait, hoping that plaintiff's non-compliance would doom his ability to offer any expert testimony," which was crucial to the plaintiff's case under the fourth factor. *Id.*  Finally, the court found that the fifth factor weighed against the plaintiff because the plaintiff should have known his disclosures did not comply with Fed R. Civ. P. 26(a)(2)(C)(ii). *Id.*  On that basis, the court

denied the defendants' motion to strike, reopened discovery, and allowed the plaintiff to submit compliant reports.  *Id.* at *9.

As in *Kondragunta*, it was no surprise to Plaintiff that Defendants' experts intend to testify on the topics Plaintiff objects to because Defendants' expert disclosures indicated they would do so.[13]  Further, Defendants point out that all four witnesses were deposed regarding the purportedly objectionable topics.  (Doc. 121 at 5).  The undersigned has read each of these witnesses' depositions in ruling on Defendants' motion for summary judgment, and Defendants' assessment of the matter is accurate.  Similarly, Plaintiff did not object to the purportedly inadequate disclosures in the nearly two years since he received them, nor seek to re-depose any witnesses on the objectionable topics.[14]  Notably, Plaintiff himself offers the same argument in his opposition to Defendants' twentieth motion — even citing *Kondragunta* in support, (*see* doc. 132 at 16 n.5).  Plaintiff's failure to take any steps to mitigate the harm he now says comprises the "utmost prejudice," despite full knowledge Defendants intended to offer the allegedly objectionable testimony, cuts against excluding the evidence solely on the basis of nondisclosure.  Additionally, testimony regarding the overall quality of Plaintiff's treatment is important to establishing the defense's case.  Finally, the issue of whether the testimony Plaintiff objects to requires a report under Fed. R. Civ. P. 26(a)(2)(B) or a report under (a)(2)(C) is sufficiently close that Defendants cannot be faulted too greatly for failing to provide the former.  The undersigned finds the failure

---

[13] The undersigned also notes that unlike a case in which the complaining party and the expert witnesses are effectively strangers — say, a car wreck — the expert witnesses here are the complaining party's treating physicians.

[14] To the extent Plaintiff argues he was prejudiced by the fact the disclosures were made after each of the experts were deposed, the scheduling order, agreed to by all parties, specifically provides for expert disclosures after the close of discovery.  (*See* doc. 35 at 1-2).

to provide a Fed. R. Civ. P. 26(a)(2)(B) report, if one was required, was harmless, and Defendants'

witnesses' testimony will not be excluded on that basis.

b. **Standard of Care Testimony**

Plaintiff argues Defendants' disclosures were independently inadequate under Fed. R. Civ.

P. 26(a)(2)(C) as to testimony by Dr. Hood, Dr. Roddam, Dr. Powell and CRNP Butler on the

standard of care for professionals in their respective fields in the State of Alabama because none

of these witnesses actually provide the "summary of the facts and opinions" each will provide on

that issue, but instead only the subject matter. (Doc. 119 at 13-14). For each witness, Defendants

stated he will "testify to the standard of care applicable to" medical doctors, (Drs. Hood and

Roddam, *see* doc 119-2 at 17 & 23), orthopedists, (Dr. Powell, *see id.* at 6), or CRNPs, (CRNP

Butler, *see id.* at 11) in the State of Alabama.

The 2010 advisory committee notes to the Rule caution that "[c]ourts must take care against

requiring undue detail" from a party's Rule 26(a)(2)(C) disclosures. FED. R. CIV. P. 26 advisory

committee's note. Although Defendants' reports offer a somewhat vague formulation as to the

"standard of care" testimony, read in the context of the remainder of the reports, they are not

insufficient. Each report goes on to note that each the witness's standard of care testimony relates

specifically to Plaintiff's treatment, which cannot come as a surprise to Plaintiff. Read as a whole,

the disclosures are a far cry from the utter absence of identifiable opinion courts have found

insufficient under the Rule. *See, e.g.,* Faile v. Dillard's Inc., No. 5:11-CV-41-RS-CJK, 2011 WL

7641239, at *1 (N.D. Fla. Nov. 4, 2011) (disclosure inadequate when it stated each of five treating

physicians "may be an expert to the extent an opinion is rendered as to causation and damages");

*Kondragunta*, 2013 WL 1189493, at *4 (designation that indicated physicians would testify

"regarding their treatment of the plaintiff, their evaluation of plaintiff, the injuries caused by the

collision, plaintiff's medical records, plaintiff's prior treatment and future prognosis and treatment, and any other opinions contained in their medical records" was insufficient when it failed to indicate what they would testify about those subjects); *Brewster v. Dorel Juvenile Grp., Inc.*, No. 4:15-CV-2285-VEH, 2017 WL 1317867, at *2 (N.D. Ala. Apr. 10, 2017) (disclosure inadequate when it merely stated that "Dr. Storey is expected to testify at trial consistent with his deposition regarding Scout's pediatric growth and development, as well as the propriety of booster seat use for children of Scout's age and size" and "the topic of Scout's medical care"). Consequently, the undersigned concludes the disclosures are not insufficient so far as they relate to standard of care evidence.

### c. Testimony on Ultimate Issues

Plaintiff seeks to exclude Defendants' experts' opinions that they complied with the standard of care and/or were not deliberately indifferent because each is a legal conclusion excluded by Rule 702 and by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 209 U.S. 579 (1993). (Doc. 119 at 14-16). Defendants argue they may offer opinion evidence that embraces an ultimate issue. (Doc. 121 at 6).

Although Plaintiff contends Defendants "intend to offer . . . a conclusion, without explanation or discussion of the methodology employed to reach it, that no one in this case was deliberately indifferent," (doc. 119 at 15), this does not necessarily follow from their disclosures. "An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704. To the extent one of Defendants' witnesses provides a legal conclusion masquerading as an opinion, Plaintiff may object at trial.

### d. **Reference to Defendants as Experts**

Plaintiff argues Fed. R. Civ. P. 26(a)(2)(C) witnesses are not referred to as "experts," and thus Defendants should be precluded from referring to them as such.  (Doc. 119 at 16-17).  Plaintiff contends the jury will assign more weight to the testimony of Drs. Hood and Roddam if they are allowed to call themselves experts.  (*Id.* at 17).  Plaintiff has not attempted to disqualify either as an expert, and Plaintiff offers no support for why an expert witness under one portion of Fed. R. Civ. P. 26(a)(2) should be treated differently from any other.

Plaintiff's second motion is **DENIED.**

### 3. **Plaintiff's Third Motion (Doc. 119 at 18-23)**

As discussed above, Plaintiff's third motion mirrors Defendants' twentieth motion.  It seeks to exclude witnesses and exhibits Defendants offered for the first time in disclosures on August 10, 2018, (*see* docs. 103 & 104).

### a. **Witnesses**

Plaintiff seeks to exclude the following witnesses: Officer LaDarrious Pickens; Officer Alphonso Barber; Sergeant Akeem Edmonds; Sergeant Trenton Eades; Officer Peter Giardina; Officer Corey Odem; Officer Andie Phillips; Lieutenant Todd Wheat; and Lieutenant Mohamed Jenkins.  (Doc. 119 at 19).

Defendants do not really attempt to excuse their noncompliance.  Instead, the main argument in their response is "what's good for the goose is good for the gander," with a lengthy discussion of the inadequacies of Plaintiff's own witness disclosure.  (Doc. 122 at 1-11).  Only then do they briefly state that the witnesses they seek to call "are current employees of the Alabama Department of Corrections at the Donaldson Correctional Facility and work or have recently worked on the death row unit where Mr. Barber is currently incarcerated.  Therefore, Mr. Barber

would have had daily contact with each of these individuals during his incarceration with the ADOC." (*Id.* at 11-12). Defendants also state they are willing to make these witnesses available for deposition (and have previously offered to do so) to cure any prejudice to Plaintiff. (*Id.* at 12).

Assuming Defendants' argument points to the harmlessness of nondisclosure, preventing exclusion under Fed. R. Civ. P. 37, it falls short in a general sense. The Eleventh Circuit has instructed lower courts to "consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party . . . ." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)). Here, Defendants offer no explanation at all for the failure to disclose. Despite the fact the witnesses' testimony is likely to be important to the issue of Plaintiff's mobility and restrictions, the burden is not on Plaintiff to depose every death row officer to determine whether he or she has relevant information; it is on Defendants to identify the specific officers from whom they intend to elicit testimony. Further, Defendants (and Plaintiff) are correct that the relief ought to be reciprocal — untimely-disclosed witnesses should be excluded as to both parties. The undersigned has already excluded Plaintiff's undisclosed witnesses; as a general matter, the same ought to apply to Defendants'.

That is not the end of the story, though, because several of the witnesses Plaintiff now seek to exclude were part of his own disclosures. At a minimum, Plaintiff identified Lieutenant Mohamed Jenkins and Officer LaDarrious Pickens; he arguably also identified Officer Andie Phillips by listing "Officer Philips." (*See* doc. 122-1 at 5; doc. 150 at 2). "The purpose of the exclusion of undisclosed witnesses is to avoid unfair surprise and associated prejudice." *Purdee v. Pilot Travel Centers, LLC*, No. CV407-028, 2010 WL 11537596, at *2 (S.D. Ga. Jan. 20, 2010) (citing *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007)).

As Plaintiff was well aware these witnesses had discoverable information, he cannot claim any real surprise or harm from learning Defendants intend to rely on them at trial, regardless of whether Defendants previously disclosed them.  Nor was Plaintiff prejudiced by his failure to depose witnesses he listed on own his initial disclosures.  Considering this lack of prejudice to Plaintiff, as well as the fact that providing at least some testimony from correctional officer witnesses will likely be crucial to Defendants' ability to defend this case, Plaintiff's motion is due to be denied as to Lieutenant Mohamed Jenkins and Officer LaDarrious Pickens; they will be permitted to testify.  The parties should determine whether "Officer Philips" identified Officer Andie Phillips; if so, he or she will also be permitted to testify.

b.  **Specific Areas of Testimony by Wardens**

Plaintiff briefly takes issue with the fact Defendants intend to offer testimony from Wardens Leon Bolling and Angela Miree (both of whom are former defendants in this action) about Plaintiff's health status.  (Doc. 119 at 19).  In their Rule 26 disclosures, Defendants identified Warden Miree as a witness who "may have information . . . used to support her defense and Warden Bolling as a witness who "may be used to support the defense of this case," (doc. 119-5 at 3), but never supplemented those disclosures to specifically indicate that the two wardens would testify about Plaintiff's health.  Although Plaintiff's motion does not directly request these witnesses be barred from testifying as to his health status, his trial brief offers objections to this testimony.  (*See* doc. 111 at 7).  To the extent Plaintiff seeks to bar this testimony, his motion is meritless.  At the time Defendants disclosed these witnesses, the witnesses were active defendants. They were not dismissed until the undersigned granted summary judgment, well after the close of discovery.  Plaintiff cannot seriously be surprised by the fact that the wardens' testimony will

33

include their observations of Plaintiff, and their testimony is not due to be excluded on the hypertechnical basis Plaintiff advances.

c. **Exhibits**

The only exhibits Plaintiff specifically identifies in his motion that have not been disclosed or produced to him are: (1) a listing of inmates housed in segregation February 11 through February 15, 2012; (2) medical literature and illustrations pertaining to orthopedics; and (3) video of the death row unit. (Doc. 119 at 20). Plaintiff also states other exhibits, including excerpts from Plaintiff's medical chart, are vaguely described. (*Id.*).

As to the former category, Defendants make no effort to show the nondisclosure of this evidence was harmless or substantially justified. Therefore, it is due to be excluded. Examining Plaintiff's objections to Defendants' exhibit list, the latter category seems to encompass any exhibit Defendants described, but did not cite to a Bates numbered document to support. (*See* doc. 108). The undersigned will not bar this evidence wholesale on such a technicality. As for the excerpts from the medical chart, Defendants oppose Plaintiff's motion on the basis that they intend to use portions to counter whatever evidence Plaintiff presents at trial. (Doc. 122 at 13). Plaintiff offers no basis to conclude this is impermissible.

Based on the foregoing, Plaintiff's motion is **GRANTED IN PART** to the extent that: (1) with the exception of Lieutenant Mohamed Jenkins, Officer LaDarrious Pickens, and Officer Andie Phillips, Defendants are barred from calling any witness not disclosed to Plaintiff prior to August 10, 2018; and (2) any exhibits not disclosed to Plaintiff in discovery are excluded. The parties are **DIRECTED** to confer as to whether Officer Andie Phillips is the "Officer Phillips" identified in Plaintiff's Rule 26 disclosures. The parties should inform the court of their conclusion at the telephone conference currently set for October 22, 2018. If the parties conclude Officer

34

Andie Phillips was not the officer identified in Plaintiff's disclosures, his or her testimony will also be excluded.  The motion is **DENIED** in all other respects.  To the extent Plaintiff contends an exhibit was not sufficiently identified to him in Defendants' pretrial disclosures, he may object at trial.

### 4. Plaintiff's Fourth Motion (Doc. 119 at 24-25)

In this motion, Plaintiff seeks to exclude Defendants' "good character" evidence — by which he means the curricula vitae of Drs. Hood and Roddam.  (*Id.*).  Plaintiff also seeks to bar Defendants from wearing medical attire or badges at trial.  (*Id.*).  Defendants respond that the purported "good character" evidence is not character evidence at all, but is relevant to the "knowledge, skill, experience, training, [and] education" required to establish the doctors are experts under Rule 702.  (Doc. 123 at 1-2).  Defendants also state they are entitled to wear their uniforms as part of their right to present themselves in their best posture.  (*Id.* at 2-4).

Defendants have the better argument on both portions of this motion.  First, Plaintiff's argument the defendant doctors' CVs are character evidence is tenuous, and Plaintiff offers nothing beyond assertion to support it.  Second, Defendants point to a legitimate, non-character-related reason for the CVs' admissibility.  Third, Plaintiff's best argument to support barring Defendants from wearing medical attire is that "the influence of uniforms is difficult to quantify" and creates a risk of prejudice.  (Doc. 119 at 25).  Even assuming Defendants wear medical attire, there is no reason to suspect the risk of prejudice is greater than in allowing a police or correctional officer or member of the military to wear a uniform at trial, practices courts frequently allow.  *See, e.g., Neal v. Cassiday*, No. 3:06-CV-8/RV/MD, 2009 WL 691878, at *2 (N.D. Fla. Mar. 13, 2009); *Jones v. Ralls*, 187 F.3d 848 (8th Cir. 1999).  Therefore, the motion is **DENIED**.

**5. Plaintiff's Fifth Motion (Doc. 119 at 26-27)**

In this motion, Plaintiff seeks to bar an email sent by Dr. Powell's assistant, Kathy Green, to a medical scheduler at Donaldson Correctional Facility named Tameka Sellers, in which Kathy Green purports to relay Dr. Powell's opinion regarding the timing of a hip replacement if a steroid injection fails. (*Id.*). Plaintiff argues this motion presents multiple levels of hearsay, none of which are subject to an exception, nor can it be authenticated if not hearsay. (*Id.*). Defendants state the email falls into the hearsay exception for records of regularly conducted activities and is self-authenticating. (Doc. 131). Alternatively, they argue the email would still be admissible to show what the medical records reflect regarding Plaintiff's diagnosis and treatment. (*Id.*).

"A record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6). Defendants attach a portion of Dr. Powell's deposition to support that each of these factors is met. (Doc. 131-1). The undersigned agrees this email satisfies each of the Rule's requirements. Further, to the extent the email is part of Plaintiff's medical records, Defendants are correct it is self-authenticating under Rule 902(11) — assuming Defendants have

complied with the Rule.   Therefore, the motion is **DENIED**, with leave for the Plaintiff to challenge the certification under Rule 902(11).

### 6. Plaintiff's Sixth Motion (Doc. 119 at 28-29)

In this motion, Plaintiff requests that "this Court bar argument that an inference should be drawn against Plaintiff because third-party witnesses are absent at trial," specifically referencing "third-party witnesses, who may be referenced at trial or whose names may appear in documents." (*Id.*).   In support, Plaintiff states that there are no witnesses with relevant testimony who are peculiarly within his control and whom Defendants can establish are unavailable, as required in this circuit before an adverse inference instruction is given.   (*See id.*) (citing *United States v. Nahoom*, 791 F.2d 841, 846 (11th Cir. 1986) and *United States v. Walcott*, 431 F. App'x 860, 865 (11th Cir. 2011).   Defendants oppose this motion on the basis that they should be allowed to point out to the jury that Plaintiff has failed to call any medical witnesses or providers to support his claim.   (Doc. 124).   That is not what Plaintiff is requesting, though.   Plaintiff's motion is **GRANTED**, although Defendants may request an adverse inference instruction if there is a witness for whom it is appropriate.

### 7. Plaintiff's Seventh Motion (Doc. 119 at 30-32)

Plaintiff seeks to bar Defendants from "introducing testimony, evidence, or argument that Plaintiff ever gave his prescription narcotic pain medication to other prisoners" on the basis that this evidence would be irrelevant, requiring its exclusion under Rule 402, and would be prejudicial, misleading, and take a substantial amount of time to rebut, all of which require its exclusion under Rule 403.   (*Id.*).   Using basically the same arguments contained in their twelfth and thirteenth motions in limine, Defendants request Plaintiff's motion be granted, and all evidence related to the pain medications be barred.   (Doc. 125).   For the same reasons stated above, the undersigned will

not take Defendants up on their request to exclude all evidence of Plaintiff's pain medication. However, both parties are correct that the issue of whether Plaintiff gave his narcotic medication to other inmates is irrelevant when the cessation or denial of Plaintiff's narcotic medication is not a claim remaining before the court, requiring its exclusion under Rule 402. Therefore, the motion is **GRANTED**.

### 8. Plaintiff's Eighth Motion (Doc. 119 at 33-35)

In Plaintiff's eighth motion, Plaintiff requests the court exclude "evidence or reference to any [of his] disciplinary history or other bad acts," on the basis they are irrelevant under Rule 402 and should otherwise be excluded under Rule 403. (*Id.*). Defendants contend this evidence is admissible under Rules 608(b) and 404.[15]  (Doc. 126).

Under Rule 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." FED. R. EVID. 608(b).  Rule 404(b) bars "[e]vidence of a crime, wrong, or other act to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but permits this evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

Plaintiff points to one disciplinary record, which is extremely vague beyond stating it is a "behavior citation." (*See* doc. 119-12).  Defendants offer that Plaintiff's disciplinary record

---

[15] Defendants also extend their argument to Plaintiff's witnesses, which is beyond the scope of the motion.

"demonstrate[s] . . . refusal to comply with ADOC regulations, policies, or instructions," which shows that he "maintain[s] a significant bias against the ADOC and its contracted medical providers, including Dr. Hood, Dr. Roddam, and Jefferson Dunn." (Doc. 126 at 3). This does not follow from a single disciplinary incident whose contours are unknown to the court, and the case Defendants cite to support their position, *Ellis v. Capps*, 500 F.2d 225 (5th Cir. 1974), takes a fact-specific view of the evidence that is not available to the court here. Without more information, the undersigned cannot determine whether the evidence should be barred. Therefore, the motion is **DENIED**, subject to Plaintiff's ability to object to its admission at trial (should Defendants offer it).

### 9. Plaintiff's Ninth Motion (Doc. 119 at 36-39)

Plaintiff's ninth motion relates to additional evidence not previously disclosed by Defendants: any convictions of Plaintiff's witnesses they wish to use under Rule 609. (*Id.*). Plaintiff argues Defendants failed to identify any such convictions in their discovery responses beyond Plaintiff's. (*Id.* at 36). Plaintiff also argues any arrests are inadmissible to impeach his witnesses' credibility. (*Id.* at 38-39). Defendants' response tracks their response to Plaintiff's first motion, and they do not respond to Plaintiff's argument regarding arrests. (Doc. 127).

Defendants contend they were not required to provide notice of these convictions under Rule 609 because the prisoner witnesses are all incarcerated. (Doc. 127 at 3). That is not what Plaintiff argues. However, to the extent this can be read to indicate that Defendants' nondisclosure was harmless as it pertains to prisoner witnesses, the undersigned agrees. It follows from the fact that the prisoner witnesses are on death row that they have committed felonies subject to admission under Rule 609. Consequently, Plaintiff's motion is **DENIED** to the extent it requests any evidence of these convictions be excluded. To mitigate any prejudice to Plaintiff from Defendants'

failure to disclose the specific nature of the convictions they intend to use — and to blunt the possibility that disclosing that each witness is a murderer who received a death sentence will show the same about Plaintiff — to the extent Defendants seek to admit evidence of Plaintiff's witnesses' convictions under Rule 609(a)(1), they are limited to introducing evidence of the number of felony convictions for which each is currently incarcerated, the fact that they are felony convictions, and the date of each conviction.  The motion is **GRANTED IN PART** to the extent that evidence that any of Plaintiff's witnesses were previously arrested is excluded.

### 10. Plaintiff's Tenth Motion (Doc. 119 at 40-41)

In this motion, Plaintiff requests each of his witnesses only be cross-examined by one defense attorney.  (*Id.*).  Conceding that there may be evidence that is relevant only to injunctive relief against Defendant Dunn, Plaintiff requests any examination by Dunn's counsel relevant to injunctive relief be conducted outside the jury's presence.  (*Id.*).  Defendants oppose this on the basis that they are separate defendants who are equally entitled to full and fair representation by their counsel.  (Doc. 128).

Defendants' argument is well-taken.  Plaintiff's support for the argument that "tag team" questioning is inappropriate comes from a class action in which individual class members' counsel "tagged in" to ask duplicative questions, *see United Nat. Records, Inc. v. MCA, Inc.*, 106 F.R.D. 39, 42 (N.D. Ill. 1985), and a case in which the court rejected the argument that two defendants were engaging in impropriety by engaging in double witness examinations, *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 717 F. Supp. 1021, 1028 (S.D.N.Y. 1989).  The motion is **DENIED**, but Defendants are cautioned that they should refrain from repetitive or redundant examination.  Should they do so, the undersigned may revisit this determination.

**11. Plaintiff's Eleventh Motion (Doc. 119 at 42-43)**

Plaintiff requests Defendants be barred from referring to the prisoner witnesses as "inmate," "prisoner," or "detainee," rather than by their names.  (*Id.*).  Plaintiff states this is derogatory and dehumanizing, creating sufficient prejudice to bar the practice under Rule 403. (*Id.*).  Defendants respond to this by saying that they do not intend to address the witnesses in such a manner, but that they ought to be able to reference the fact that they are inmates, prisoners, or detainees.  (Doc. 129).  Defendants also argue that their counsel should be allowed to refer to the prisoner witnesses in argument and in examining other witnesses as "Inmate [Surname]," on the basis that this is common.  (*Id.*).  It may be common, but there seems to be little utility and greater potential for unnecessary prejudice in referring to any specific prisoner, in any context (whether addressing them directly or not), as "Prisoner/Inmate/Detainee [Surname]," and the Plaintiff's motion is **GRANTED** to the extent it requests Defendants be barred from doing so. However, Defendants may reference the fact that these witnesses are prisoners or inmates in a general sense and may refer to them collectively as inmates or prisoners.

DONE this 19th day of October, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

41