IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES E. BARBER, JR.,** ) |  |
| ) |  |
| **Plaintiff,** ) |  |
| ) |  |
| v. ) | Case No.: 2:15-cv-0997-JHE |
| ) |  |
| **HUGH HOOD, et al.,** ) |  |
| ) |  |
| **Defendants.** ) |  |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

**COME NOW** the defendants, Hugh Hood, M.D., Roy Roddam, M.D., and Jefferson Dunn, Commissioner of the Alabama Department of Corrections, and at the close of plaintiff's evidence and pursuant to Federal Rule of Civil Procedure 50, move the Court for judgment as a matter of law on all of the plaintiff's claims. The only claims remaining in this matter against Dr. Hood and Dr. Roddam are for deliberate indifference. The only claims against Commissioner Dunn are for injunctive relief. In support of this motion, the defendants, Hugh Hood, M.D., Roy Roddam, M.D., and Jefferson Dunn, state as follows:

**I.   THE PLAINTIFF HAS FAILED TO SHOW A VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS.**

Inmates do not have a right to a specific kind of medical treatment. <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment;

{B2990811}

*how [a governmental entity] obtains such treatment is not a federal constitutional question*.") (Emphasis added).  Additionally, neither the Plaintiff nor this Court should substitute their medically untrained judgment for the professional judgment of the medical health professionals who provided evaluations and treatment of the Plaintiff during his incarceration.  See Waldrop v. Evans, 871 F. 2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received medical care, although the plaintiff may have desired different modes of treatment, care did not constitute deliberate indifference); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments").

The Eighth Circuit has also addressed whether a prison medical official violates a prisoner's federally protected rights to medical care when medical treatment has been provided.  In Meloy v. Bachmeier, 302 F. 3d 845 (8th Cir. 2002),[1] a former inmate sued several prison doctors, a nurse, and the prison's medical director[2] for failing to provide him

---

[1] This Court has favorably cited Meloy on multiple occasions.  See, e.g. Smith v. Murphy, 2016 WL 7974660, *3 (N.D. Ala. 2016); Brown v. Smith, 2016 WL 6780355, at *13 (N.D. Ala. 2016); Cannon v. Mitchem, 2014 WL 1158983, *3 (N.D. Ala. 2014); Cowan v. Allen, 2012 WL 3042438, *5 (N.D. Ala. 2012).

[2] The medical director was a trained and licensed nurse.  302 F. 3d at 846.

with a positive air pressure machine he claimed was necessary to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F. 3d at 847 citing, Camberos v. Branstad, 73 F. 3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F. 3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F. 3d at 849.

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. See Vinnedge v. Gibbs, 550 F. 2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3rd Cir. 1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988)." Williams v. Limestone County, Ala., 198 Fed. Appx. 893, 897 (11th Cir. 2006).

Cameron v. Allen, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

The Plaintiff has failed to produce any evidence that any of the Defendants are orthopedic surgeons or otherwise have the kind of medical education, training or expertise necessary to conduct a hip replacement surgery. Commissioner Dunn, in fact, is not even a physician. These Defendants had to rely on the professional judgment of Dr. Thomas Powell – the orthopedic surgeon to whom the Plaintiff was referred. Dr. Powell testified unequivocally that at no time did he inform any of the Defendants that the Plaintiff needed hip replacement surgery. In fact, Dr. Powell testified that hip replacements are rarely necessary. Dr. Powell further testified that every time he has recommended an inmate for surgery – even hip replacement surgery – the inmate received the surgery.

The record shows that the Plaintiff did receive treatment for his hip. He was given medication. He received an injection. He received a cane. He was allowed to use a wheelchair. He received a yoga matt and access to an exercise bike. In short, while the Plaintiff did not receive the elective treatment he wanted, he received the treatment he needed – which is all the Constitution requires. City of Revere, 463 U.S. at 246. Accordingly, the Defendants are entitled to judgment in their favor as a matter of law.

## II. THE PLAINTIFF FAILED TO MEET HIS BURDEN OF PROOF UNDER A CLAIM FOR DELIBERATE INDIFFERENCE UNDER § 1983.

Defendants Hugh Hood, M.D., and Roy Roddam, M.D., are internal medicine specialists and not orthopedic surgeons. Mr. Barber was sent to Thomas Powell, M.D., an orthopedic surgeon, for an evaluation with regard to his left hip. Dr. Powell

testified that he has seen and evaluated Mr. Barber and reviewed x-rays of Mr. Barber as recently as August, 2018.  Dr. Powell at no time has recommended hip replacement surgery for the Plaintiff.

To establish deliberate indifference to a serious medical need, an inmate must show: (1) "An objectively serious medical need" that, "if left unattended, poses a substantial risk of serious harm;" and (2) "That the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain of not merely accident inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor v. Adams, 221 F. 3d 1254 (11th Cir. 2000); see also, Harris v. Leder, 519 Fed. Appx. 590 (11th Cir. 2013). If Dr. Powell's decision not to recommend total hip replacement surgery for Mr. Barber was made on sound medical judgment, there cannot be any deliberate indifference on behalf of Dr. Hood and Dr. Roddam to rely on the medical judgment of the expert, Dr. Powell. Id.  Furthermore, as noted above, "The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision." Meloy, 302 F. 3d at 849.

To prevail on a claim of deliberate indifference, Barber must show that Dr. Hood and Dr. Roddam intentionally or recklessly disregarded his serious medical needs in a way that injured him.  See, Leigh v. Armor Medical Services, 635 Fed. Appx. 664 (11th Cir. 2015).  Dr. Powell has at this juncture, as of October 2018,

made the determination that in his opinion as an orthopedic surgeon, total hip replacement surgery is not medically necessary. Dr. Powell at no time has recommended hip replacement surgery to either Dr. Hood or Dr. Roddam. Therefore, neither Dr. Hood nor Dr. Roddam can be deliberately indifferent in following the medical recommendations and opinions of an expert orthopedist Dr. Powell, an orthopedic surgeon, due to the fact that the expert orthopedic surgeon has not found total hip replacement surgery, at this juncture, to be medically necessary. Id.

Barber has failed to offer evidence that either Dr. Hood or Dr. Roddam were deliberately indifferent to his necessary medical needs. Mr. Barber was sent to see Dr. Powell, a board certified orthopedic surgeon, with regard to pain in Barber's left hip. Dr. Powell continues to follow Mr. Barber and continues to be provided with x-rays of Barber's left hip by the medical staff at the Donaldson Correctional Facility. At this juncture, as of October 18, 2018, Dr. Powell, the board certified orthopedic surgeon, has not recommended surgery for Mr. Barber for his left hip. Therefore, Dr. Hood nor Dr. Roddam can be deliberately indifferent for not following the recommendation of the board certified orthopedist. Meloy, 302 F. 3d at 849.

## III. THE PLAINTIFF'S EQUITABLE CLAIMS AGAINST COMMISSIONER DUNN FAIL.

### A. COMMISSIONER DUNN IS UNDER NO CONSTITUTIONAL DUTY TO INTERVENE IN THE MEDICAL DECISIONS OF TREATING PHYSICIANS.

Reduced to its essence, the Plaintiff's failure to intervene claim in Count III of the Amended Complaint (Doc 18) is that a prison commissioner with absolutely no medical training or experience is obligated to overrule not just the treatment decisions of department contracted medical doctors with over 100 years of combined experience, but he should also overrule the treatment decisions of the outside specialist to whom the inmate has been referred.  Based upon the undersigned's research, this novel theory has not been adopted by any court in the Eleventh Circuit. To the contrary, this Court has held that prison officials are not under a duty to directly supervise medical personnel or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional deprivation.  Brown v. Smith, 2016 WL 6780355, at *13 (N.D. Ala. 2016) (citing Spruill v. Gillis, 372 F. 3d 218, 236 (3rd Cir. 2004)).[3]

That this Court should not abandon its own wise precedent is confirmed by considering the reverse of the present fact pattern.  Suppose Dr. Powell had ordered

---

[3] Report and recommendation adopted, 2016 WL 6699298 (N.D. Ala. 2016)

7

a hip replacement surgery and Commissioner Dunn refused to allow it. Would this Court find that Commissioner Dunn – who is not a doctor, let alone an orthopedic surgeon – had the constitutional authority to do so? It seems readily apparent that the Court would not hesitate to issue an order to Commissioner Dunn to follow the medical treatment plan set forth by the Plaintiff's treating physicians. The same reasoning should follow with respect to the facts adduced at trial – a medically untrained prison official should not second guess the treatment plan of an inmate's treating physicians.

Finally, given the novelty of the Plaintiff's failure to intervene theory, the court should consider the entirety of the body of law on failure to intervene claims. Crucial in any analysis of a failure to intervene claim is the element that the defendant be in a position to prevent the constitutional violation. See, e.g., Ensley v. Soper, 142 F. 3d 1402, 1407 (11th Cir. 1998); Terry v. Bailey, 376 Fed. Appx. 894, 896 (11th Cir. 2014) (unpublished) ("in order for liability to attach, the officers must have been in a position to intervene.") Commissioner Dunn, as a matter of law, is entitled to rely on the judgments of the Plaintiff's treating physicians. Brown, 2016 WL 6780355, at *13. The Plaintiff has proffered no evidence that Commissioner Dunn is a licensed medical doctor of any kind, let alone an orthopedic surgeon. Commissioner Dunn has no admitting privileges in any hospital. No doctor in Alabama is required to act on his "medical" orders. Dr. Powell testified

that he did not discuss Plaintiff with Commissioner Dunn or anyone else from ADOC regarding the need (or lack thereof) of a hip replacement for the Plaintiff. By virtue of law, education, licensing, training, and experience, Commissioner Dunn was not in a position to intervene at any time. Ensley, 142 F. 3d at 1407.

### B. PLAINTIFF'S EQUITABLE CLAIMS AGAINST COMMISSIONER DUNN DO NOT PRESENT A CASE AND CONTROVERSY AND AMOUNT TO NO MORE THAN A REQUEST FOR AN ADVISORY OPINION.

Plaintiff's claims against Commissioner Dunn do not present a case and controversy and seek, at best, an impermissible advisory opinion. "For subject matter jurisdiction to vest in a court, Article III of the United States Constitution requires that 'a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed.'" Lane v. Burrow, 192 F. Supp. 3d 1253, 1255 (N.D. Ala. 2016) (quoting United States v. Juvenile Male, 564 U.S. 932, 936 (2011)). An action must be dismissed if the Court determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

As noted in the immediately previous section, Commissioner Dunn has not, at any time, had the power or constitutional duty to override the treatment decisions of the Plaintiff's medical providers. Brown, 2016 WL 6780355, at *13. Following this action Commissioner Dunn will *still* not have the ability to provide the Plaintiff with a hip replacement on his own. Furthermore, as discussed above, the medical

testimony adduced at trial showed that Commissioner Dunn never blocked a hip replacement surgery for the Plaintiff.

It is true that the Commissioner has the authority to provide ADOC funds to pay for the treatment the Plaintiff seeks – if a qualified doctor will perform the surgery. However, Commissioner Dunn cannot perform a hip replacement surgery himself. He cannot order a doctor to perform such a surgery. Before the Plaintiff may obtain a hip replacement, an orthopedic surgeon must do what no Alabama-licensed orthopedic surgeon has done to date – order it.

Thus, there are only two real question here with respect to the equitable relief Plaintiff demands from Commissioner Dunn: 1) "what happens if the Court orders a hip replacement and no doctor will perform it"; and 2) "what happens in the future if a doctor orders a hip replacement?" These are hypothetical controversies the settling of which is not permitted under Article III of the United States Constitution. Preiser v. Newkirk, 422 U.S. 395, 401 (1975). "[T]he Article III 'case or controversy' requirement mandates that the case be viable at all stages of the litigation; 'it is not sufficient that the controversy was live only at its inception.'" Brooks v. Ga. State Bd. of Elections, 59 F. 3d 1114, 1119 (11th Cir.1995) (citation omitted). Federal court decisions "settling" hypothetical controversies are not binding on the parties. R.T. Vanderbilt Co. v. Occupational Safety and Health Review Comm'n, 708 F. 2d 570, 576-77 (11th Cir. 1983) (citing Muskrat v. U.S.,

219 U.S. 346, 362 (1911)).  Plaintiff can have no claim against Commissioner Dunn unless and until someone with the authority to order a hip replacement issues that order and Commissioner Dunn refuses to permit the surgery.  Id.

### C.   PLAINTIFF LACKS STANDING TO RAISE AN EQUITABLE CLAIM AGAINST COMMISSIONER DUNN.

Similarly, a plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury at the hands of the defendant.  Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).  "[E]very court has an independent duty to review standing as a basis for jurisdiction *at any time, for every case it adjudicates*."  Fla. Ass'n of Med. Equip. Dealers v. Apfel, 194 F. 3d 1227, 1230 (11th Cir. 1999) (emphasis added).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  Id. at 98.  After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing.  Id. at 99-100.  The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* be subjected to another chokehold.  Id. at 108.

The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold.  Id.

The Plaintiff is in an identical position as the plaintiff in Lyons.  Any request for equitable relief rests solely on speculation that someone in the future *might* order a hip replacement for the Plaintiff, and Commissioner Dunn *might* refuse to allow the surgery to take place.  However, unlike the defendant in Lyons who had control over its police officers, Commissioner Dunn has no authority to second guess the medical decisions of Dr. Roddam, Dr. Hood, Dr. Powell, or any other medical doctor – thus making the instant case even weaker than Lyons in terms of standing.  There is no evidence that Commissioner Dunn has ever blocked any ordered hip replacement surgery for the Plaintiff.  Until a hip replacement for the Plaintiff is ordered *and* Commissioner Dunn blocks the procedure, the Plaintiff does not have standing to obtain equitable relief from Commissioner Dunn.  Lyons, 461 U.S. at 108.

## CONCLUSION

Based upon the foregoing, Defendants Hugh Hood, M.D., Roy Roddam, M.D., and Jefferson Dunn, Commissioner, respectfully move this Court to grant judgment as a matter of law on their behalf as Barber has failed to meet his burden of proof with regard to any of his claims remaining in this case.

Respectfully submitted,

/*s/ Philip G. Piggott*
Philip G. Piggott (ASB-4379-P67P)
E-mail: pgp@starneslaw.com
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL   35209
Telephone: 205-868-6000
*Attorney for Defendants,*
*Hugh Hood, M.D. and Roy Roddam, M.D.*

/s*/Gary L. Willford, Jr.*
Gary L. Willford, Jr. (WIL198)
Assistant Attorney General
State of Alabama Department of Corrections
P. O. Box 301501
Montgomery, AL 36130-1501
*Attorney for Defendant, Jefferson S. Dunn,*
*Commissioner*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on **October 31st, 2018,** filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

| | |
|---|---|
| Henry F. Sherrod, III, Esq.<br>HENRY F. SHERROD III, P.C.<br>119 South Court St., Suite 200<br>Florence, AL  35631-0606 | Sarah Grady, Esq.<br>Arthur Loevy<br>Jon Loevy<br>Michael Kanovitz<br>LOEVY & LOEVY<br>312 North May Street, Suite 100<br>Chicago, IL 60607 |
| Bethany Rupert, Esq.<br>KING & SPALDING<br>2484 Brookdale Dr NE<br>Atlanta, GA 30345 | Barry Goheen, Esq.<br>Coleen Schoch, Esq.<br>Bethany Rupert, Esq.<br>KING & SPALDING LLP<br>1180 Peachtree Street NE<br>Atlanta, GA 30309 |

                                                s/ *Gary L. Willford, Jr.*
                                                OF COUNSEL