FILED
2018 Dec-14  PM 01:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JAMES E. BARBER, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:15-cv-0997-JHE** |
| ) | |
| **HUGH HOOD, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS COMMISSIONER JEFFERSON DUNN'S OPPOSITION TO PLAINTIFF'S POST TRIAL MOTIONS

**COMES NOW** Jefferson Dunn, Commissioner of the Alabama Department of Corrections, a Defendant in the above-entitled action, and files this brief in opposition to the Plaintiff's post-trial motions.  (Docs 160 and 161.)[1]

## INTRODUCTION

This matter was tried the week of October 29, 2018 as ***both*** a bench and jury trial as proposed by the Plaintiff.  (Doc 99 at pp. 1, 4; Doc 157 at p. 1 n.2.)  Plaintiff rested on October 31, 2018.  At that time, the Defendants filed a joint Motion for Judgment as a Matter of Law.  (Doc 150.)  The Court granted the motion with respect to the equitable claims against Commissioner Dunn, but denied it in all other

---

[1] It appears that the Plaintiff's amended motion (Doc 161) was to correct the failure to affix an electronic signature on the original motion (Doc 160).  Out of an abundance of caution, if there is any substantive difference between the two filings, this opposition is intended to address both.

respects.  (Doc 157.)  The trial proceeded against Dr. Hugh Hood and Dr. Roy Roddam, which resulted in a defense verdict.  (Id.)

Plaintiff has now filed a motion and amended motion for a new trial and to alter or amend the judgment under Rules 52 and 59 of the Federal Rules of Civil Procedure.  (Docs 160 and 161.)  Plaintiff raises three main arguments to support his motion: 1) the Court should not have granted judgment as a matter of law to Commissioner Dunn; 2) Warden Leon Bolling purportedly said "death row" during his testimony following the Court's granting of judgment as a matter of law to Commissioner Dunn; and 3) counsel for Dr. Hood and Dr. Roddam mentioned "Chicago Lawyers" during closing arguments after judgment had been granted in Commissioner Dunn's favor.  For the reasons set forth below, as well as those contained in Dr. Hood and Dr. Roddam's response which, for the sake of brevity, are adopted incorporated herein *in extenso*, the Court should deny the Plaintiff's motion in its entirety.

## STANDARD OF REVIEW

In relevant part, Rule 52 provides that a court sitting without a jury or with an advisory jury must "find the facts specially and state its conclusions of law separately."  Fed. R. Civ. P. 52(a)(1).  However, these findings and conclusions "***may be stated on the record*** after the close of the evidence or may appear in an

2

opinion or a memorandum of decision filed by the Court." Id. (emphasis added).

Moreover:

> If a party has been fully heard on an issue during a ***nonjury trial*** and the court finds against the party on that issue, ***the court may enter judgment against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue***. . . . A judgment on partial findings must be supported by findings of fact and conclusions of law ***as required by Rule 52(a)***.

Fed. R. Civ. P. 52(c) (emphasis added).

While not specifically stated, it appears that the Plaintiff's motion is based on both Rule 59(a) (new trial), and Rule 59(e) (alter, amend or vacate). When ruling on a Rule 59(a) motion for new trial, the judge must determine "if in his opinion, 'the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" Insurance Co. of N. America v. Valente, 933 F. 2d 921, 922-23 (11th Cir. 1991) (quoting Hewitt v. B.F. Goodrich Co., 732 F. 2d 1554, 1556 (11th Cir. 1984)). However, to make sure the trial judge does not simply substitute his judgment for that of the jury, the Eleventh Circuit "noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence." Id. at 923 (quoting Hewitt). "***The trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow***." Hewitt, 732 F.2d at 1559. The

judge must protect against manifest injustice in the jury's verdict, but it is not his role to assess credibility where conflicting testimony has been presented during the trial.  Id. at 1558-59.  Instead, the judge must defer to the jury on the weight to be given to each witness's testimony. Id. at 1558-59.

Turning to Rule 59(e), and contrary to the Plaintiff's assertion, in the Eleventh Circuit the long settled practice of the district courts is that such motions may only be granted: "(1) to account for an intervening change in controlling law; (2) to address newly-discovered or previously-unavailable evidence; or (3) to correct a clear error or prevent manifest injustice."  Kilgore v. McKesson Corp., 2005 WL 8157843, *2 (N.D. Ala. 2005) (citing Cover v. Wal-Mart Stores Inc., 148 F.R.D. 294 (M.D. Fla. 1993)); see also Summit Med. Ctr. Of Ala., Inc. v. Riley, 284 F. Supp. 2d 1350, 1354-55 (M.D. Ala. 2003) ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.").  The decision to alter or amend a judgment is committed to the sound discretion of the trial judge.  American Home Assur. Co. v. Glenn Estess & Assocs., Inc., 763 F. 2d 1237, 1238-39 (11th Cir. 1985).   However, "[t]he purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed."  Stone v. Wall, 135 F. 3d 1438, 1442 (11th Cir. 1998).

Plaintiff has proffered no change in controlling law nor does he assert that there is newly discovered or previously-unavailable evidence.  (See generally Doc 161.)  Therefore, he can only prevail if he is able to demonstrate "clear error" or that it would be manifestly unjust to allow the decisions of the Court and the jury to stand.  "[B]ecause of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."  Kilgore, 2005 WL 8157843, at *2 (quoting *11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed.1995)* at p. 128).

## ARGUMENT

## I.    THE COURT HAD THE AUTHORITY TO GRANT JUDGMENT AS A MATTER OF LAW TO COMMISSIONER DUNN ON THE EQUITABLE CLAIMS AT THE CLOSE OF THE PLAINTIFF'S EVIDENCE.

On the basis of an unpublished Eleventh Circuit opinion, Plaintiff asserts that a judgment as a matter of law is not permissible for equitable claims not tried to a jury. (Doc 161 at p. 11 citing Hepsen v. Resurgent Capital Servs. LP, 383 F. App'x 877, 844 (11th Cir. 2010).)  Plaintiff's reliance on Hepsen is misplaced for two reasons.

First, there was a jury in this case that did hear issues related to the equitable claims.  Prior to trial, the Court advised the parties that "injunctive relief is not a standalone claim, but is instead predicated on an underlying Eighth Amendment violation." (Doc. 82 at p. 23.)  The Court further noted that "[t]he standard required for Barber to obtain

5

injunctive relief . . . is precisely the same as it is to obtain any other relief under § 1983."
(Id.)  As the court noted, in the context of this case, only deliberate indifference to serious
medical needs is actionable under 42 U.S.C. § 1983.  (Id. at p. 22 citing Estelle v. Gamble,
429 U.S. 97, 104 (1976).)

Plaintiff has also apparently forgotten the position he took in response to this
Court's order for the Parties to brief whether separate trials on the equitable and
damages claims were appropriate.  (Doc 95.)  In his response, Plaintiff made the
following introductory remarks:

> In its July 11 Order, the Court posed four related questions regarding
> concerns about Plaintiff's claim for an expedited hearing on his
> equitable claims for injunctive relief.  Those questions concerned the
> Court's ability to order separate hearing on Plaintiff's equitable and
> legal claims, and the proper order of any such separate trials.  *After
> reviewing the applicable case law, it is Plaintiff's position that this
> Court should order the jury trial to proceed as scheduled, and to
> permit the parties to simultaneously present evidence regarding the
> equitable and legal claims in the case, presenting evidence pertaining
> only [to] the equitable claims outside the presence of the jury during
> breaks.*  The Court should then permit the jury to render its verdict on
> Plaintiff's legal claims before reaching its own determination about
> Plaintiff's equitable claims for an injunction.

(Doc 99 at p. 1 (emphasis added).)  The Plaintiff later reiterated this preference as a
proposed course of action adding the following:

> Allowing for simultaneous presentation of the evidence, and
> presentation of additional equitable evidence during breaks in the jury
> trial, will promote judicial economy, preventing the Court, the parties,
> and third-party witnesses from having to attend a second trial after the
> jury reaches its verdict on the legal claims in the case.  See Abbott Point
> of Care, Inc. v. Epocal, Inc., 868 F. Supp. 2d 1310, 1314 (N.D. Ala.

2012) (discussing various ways to resolve legal and equitable claims, including simultaneous bench and jury trials.)

(Id. at p. 4.)  Plaintiff's argument at trial and as repeated in his post-trial brief that his "counsel did not need to put forward any evidence as to the equitable claim during the jury trial portion of the case" (Doc 161 at p. 7), is ludicrous in the face of his own earlier filings.  (Compare Doc 99 at pp. 1, 4, with Doc 161 at p. 7.)

As proposed by the Plaintiff, a simultaneous bench/jury trial was held.  (Doc 157 at p. 1 n.2.)  During trial, the Plaintiff could have asked to have the jury excused to present evidence to support all elements of his equitable claims, but for reasons only known to the Plaintiff and his counsel, failed to do so.  As proposed by the Plaintiff, the jury was excused when Commissioner Dunn's counsel sought to cross-examine witnesses on matters related solely to the equitable claims.  (Doc 157 at p. 1 n.2.)  Even in the face of Commissioner Dunn asking for the jury to be excused for cross-examination questions on the equitable claims, Plaintiff *still* did not ask for the jury to be excused so evidence on the equitable claims could be presented during his case-in-chief.

Prior to resting, during a simultaneous jury/bench trial requested by Barber, the Plaintiff failed to produce any evidence that Commissioner Jefferson Dunn violated the Plaintiff's Eighth Amendment rights.  Prior to resting, the Plaintiff failed to produce sufficient evidence of any element of deliberate indifference with respect

to Commissioner Dunn.  Prior to resting, the Plaintiff failed to establish that he was entitled to equitable relief from Commissioner Dunn.

As set forth by the Court during its oral explanation of its ruling on the record, the Plaintiff failed to produce any evidence that Commissioner Dunn had any authority to order Doctor Roddam and/or Dr. Hood to order Dr. Powell to perform a hip replacement surgery.  (Doc 161 at p. 7.)  As admitted by the Plaintiff in his brief "*there was no direct evidence introduced on that point*."  (Id. (emphasis added).) As discussed more fully below, and as argued in the Defendants Motion for Judgment as a Matter of Law, the failure to produce such evidence at trial was fatal to both the deliberate indifference claim's objective element and the failure to intervene claim's position to intervene element.  The Plaintiff was "fully heard on an issue *during a jury trial*."  (Doc 161 at p. 11 citing Fed. R. Civ. P. 50(a)(1) (emphasis added by Plaintiff).)  With the Plaintiff failing to present sufficient evidence to support his claims for equitable relief at the close of the Plaintiff's evidence, it was proper for the Court to grant judgment to Commissioner Dunn as a matter of law.

The course the trial followed was the very one the Plaintiff suggested to the Court.  The Plaintiff had notice from the Court that there would be issues decided by the jury – deliberate indifference – that were related to the availability of equitable relief.  Plaintiff knew that he had to present evidence to support his equitable claims

during the jury portion of the trial (albeit during breaks with the jury out of the courtroom). The Plaintiff should be estopped from arguing that additional proceedings are necessary based upon a process he proposed. Plaintiff has waived any arguments as to the structure of this trial, or, at the very least should be estopped from challenging the process he proposed as invited error.

Second, the published Eleventh Circuit decision cited by the <u>Hepsen</u> court did state that Rule 50 motions only applied to jury trials. 383 Fed. App'x at 884 <u>citing</u> <u>Falanga v. State Bar of Ga.</u>, 150 F. 3d 1333, 1338 n.12 (11th Cir. 1998). However, the <u>Falanga</u> court also noted that in substance the motion before it was one made under Rule 52(c) for non-jury trials. <u>Id.</u> Although the <u>Falanga</u> court reversed the district court's partial granting of what was then called a "directed verdict," it did so on ***the merits*** and not on the issue advanced by the instant Plaintiff – that judgments as a matter of law are not permitted at all in non-jury trials. <u>Id.</u> at 1344.

Moreover, the Eleventh Circuit has explicitly held that a motion is not controlled by its nomenclature, but by its substance, however styed, "to be the type proper for the relief requested." <u>Lucas v. Florida Power & Light Co.</u>, 729 F. 2d 1300, 1301 (11th Cir. 1984) (<u>quoting</u> <u>Miller v. Transamerican Press, Inc.</u>, 709 F. 2d 524, 527 (9th Cir. 1983)). Rule 52(c) allows the Court to enter judgment on partial findings where, as here, "a party has been fully heard on an issue during a nonjury trial." A court "may enter judgment against the party on a claim . . . that, under the

controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c).  Moreover, when the Court grants such a motion, it need not, as the Plaintiff asserts, set forth its reasons in a memorandum opinion or other writing, it may do so, as the Court did here, by stating its reasons on the record. Fed. R. Civ. P. 52(a)(1) and (c).[2]

Accordingly, Commissioner Dunn made a proper motion under either Rule 50 or 52(c).  The Court properly entertained the motion – going so far as to allow the Plaintiff an overnight break to respond to the motion.  The Court then properly stated its reasons for granting the motion on the record as required by Rule 52(a)(1).  The Court committed no procedural error in granting judgment in Commissioner Dunn's favor as a matter of law.

## II.   THE COURT MADE A SEPARATE RULING ON THE EQUITABLE CLAIMS AGAINST COMMISSIONER DUNN AND, IN ANY EVENT, THE JURY'S VERDICT PRECLUDES THE ENTRY OF EQUITABLE RELIEF.

The Plaintiff next states that the court "must decide Plaintiff's claim for injunctive relief . . ." (Doc 161 p. 13.).  However, with respect to Commissioner Dunn, the Court already did so in granting him judgment as a matter of law due to the Plaintiff's failure to produce sufficient evidence of his claims.  (Doc 157 at pp.

---

[2] Rule 52(c) provides that a "judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."  For its part, Rule 52(a)(1) provides that the "findings and conclusions *may be stated on the record* after the close of evidence or may appear in an opinion or a memorandum of decision filed by the court."  (Emphasis added.)

1-2 ("Pursuant to the court's oral order, the court also enters **JUDGMENT** in favor of Defendant Jefferson Dunn and against Plaintiff James Barber.") (emphasis in the original).)  Under the case law cited by the Plaintiff in his brief, the Court has no obligation to decide ***again*** whether equitable relief is appropriate.

While this should be enough to deny the Plaintiff's motion on this particular argument, prudence dictates that Commissioner Dunn address the impact of the jury's verdict with respect to the equitable claims against Commissioner Dunn.  (Doc 161 at pp. 14-15.)  The Plaintiff's argument on this issue is that because the jury verdict form[3] does not contain the specific grounds for which the jury found in Dr. Hood and Dr. Roddam's favor on both the deliberate indifference and failure to intervene claims, there can be no preclusive effect for Commissioner Dunn on the equitable claims against him.  This argument wholly ignores the elements of the two claims and the evidenced adduced at trial.

To prevail on his deliberate indifference claim, the Plaintiff was required to produce sufficient evidence that the Defendants 1) had subjective knowledge of a risk of serious harm; 2) disregarded that risk; by 3) conduct that is more than mere negligence.  McElligott v. Foley, 182 F. 3d 1248, 1255 (11th Cir. 1999).  To prevail

---

[3] Of course, the Defendants requested a special verdict form that covered the elements of the claims.  (Doc 134 at pp. 64-68.)  Plaintiff's argument regarding the vagueness of the jury verdict form **he proposed and the Court accepted over the Defendants' objections**, is a quintessential case of unclean.  (Compare Doc 134 at pp. 59-63, with Doc 156.)  Plaintiff created the very situation he now seeks to exploit by opposing special interrogatories.

on his failure to intervene claim, the Plaintiff was required to prove that 1) he was denied adequate medical care in violation of the Eighth Amendment; 2) the defendants "actually knew" Plaintiff's right to medical care "was being" or was about to be denied"; 3) Defendants had a "realistic opportunity" to do something to prevent the harm from occurring; 4) Defendants failed to take reasonable steps to stop the harm from occurring; and 5) the Defendants' failures harmed the Plaintiff. (Doc 155 at pp. 6-7; see also Ensley v. Soper, 142 F. 3d 1402, 1407 (11th Cir. 1998).) *A fortiori* to find for Dr. Roddam and Dr. Hood, the jury had to have found that the Plaintiff failed to produce sufficient evidence on at least one element of each claim.

With one exception – subjective awareness – the failure of any of these elements with respect to Dr. Hood and Dr. Roddam is ***also*** fatal to the Plaintiff's claims against Commissioner Dunn.  If the jury found that there was no serious risk of harm to the Plaintiff, both claims fail as to Commissioner Dunn because there can be no Eighth Amendment violation.  If the jury found that Plaintiff failed to show that his treating physicians disregarded a serious risk of harm Plaintiff's, then the course of treatment was proper and no liability can attach to Commissioner Dunn on both claims.  If the jury found that the doctors conduct did not harm the Plaintiff, then Commissioner Dunn prevails on both claims.

Oddly, Plaintiff asserts that a finding of no harm by the Defendant doctors could somehow have no impact on the liability of Commissioner Dunn.  (Doc 161

at p. 15.)  However, Plaintiff's entire theory against Commissioner Dunn is based upon Commissioner Dunn's purported control over the very doctors the Plaintiff asserts are harming him by denying a hip replacement.  If the doctors who are the purported agents of Commissioner Dunn did not cause harm to the Plaintiff, logically neither did Commissioner Dunn by "selecting" the doctors who treated the Plaintiff and caused no harm.  Even if *respondeat superior* liability applied, Commissioner Dunn certainly could not be liable as a matter of agency law.  <u>See</u>, <u>e.g.</u>, <u>H&S Homes, LLC v. McDonald</u>, 978 So. 2d 692, 693-94 (Ala. 2007) (where agents have been exonerated, it is "impossible" to recover from the principal).[4]

Turning to the element of subjective awareness, it is simply absurd to suggest that the jury could have found against the Plaintiff on the question of subjective awareness.  The Plaintiff testified that Dr. Hood and Dr. Roddam were involved in his left hip treatment.  Dr. Roddam and Dr. Hood both admitted to being involved in treating the Plaintiff's left hip pain.  A large number of medical records were introduced showing that both Dr. Hood and Dr. Roddam were involved in the treatment of the Plaintiff's left hip pain.  The jury could not have found that either Defendant was unaware of the Plaintiff's medical condition.

---

[4] Of course, *respondeat superior* cannot form a basis of liability under 42 U.S.C. § 1983.  <u>Monell v. New York City Dept. of Social Svcs</u>, 436 U.S. 658, 693-694 (1978).

13

More importantly, however, the Plaintiff proffered no evidence whatsoever that Commissioner Dunn was subjectively aware of the Plaintiff at all – let alone his medical condition.  On cross-examination outside the presence of the jury, all three treating physicians denied ever discussing Mr. Barber with Commissioner Dunn. The Plaintiff's expert denied on cross-examination ever discussing the Plaintiff's condition with Commissioner Dunn.  Accordingly, even if the Court could stretch the credulity of the Plaintiff's argument far beyond the breaking point, the undisputed evidence at trial was that Commissioner Dunn did not have the requisite subjective awareness for either deliberate indifference or failure to intervene.

The jury's decisions on common issues are binding on a court sitting in equity. Brown v. Ala. Dep't. of Transp., 597 F. 3d 1160, 1184 (11th Cir. 2010).  All this Court has the responsibility for issuing equitable relief (Doc 99 at p. 3), it cannot contradict "findings necessarily made by the jury."  Brown, 597 F. 3d at 1184.  In the interests of brevity, Commissioner Dunn adopts and incorporates the arguments raised by Doctor Hood and Doctor Roddam in their responses to the Plaintiff's post-trial motions regarding the jury's verdict.

In short, the jury found for Doctor Hood and Doctor Roddam on the deliberate indifference and failure to intervene claims.  If Doctor Hood and Dr. Roddam – the Plaintiff's treating physicians – were not deliberately indifferent and did not fail to intervene, then Commissioner Dunn who subjectively knew absolutely nothing

14

about the Plaintiff and is not a doctor, cannot be deliberately indifferent and cannot be said to have failed to intervene.  Without a finding that the Plaintiff's federally protected rights were violated, it is axiomatic that there can be no award of relief either in damages or equity.

## III.   PRIOR TO RESTING, THE PLAINTIFF FAILED TO SHOW A VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS.

Inmates do not have a right to a specific kind of medical treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a governmental entity] obtains such treatment is not a federal constitutional question*.") (Emphasis added).  For Eighth Amendment purposes, medical care provided to inmates need not be "perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F. 2d 1495, 1505 (11th Cir. 1991).  Additionally, neither the Plaintiff nor this Court should substitute their medically untrained judgment for the professional judgment of the medical health professionals who provided evaluations and treatment of the Plaintiff during his incarceration.  See Waldrop v. Evans, 871 F. 2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received medical care, although the plaintiff may have desired different modes of treatment, care did not constitute deliberate indifference);

Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments").

The Eighth Circuit has also addressed whether a prison medical official violates a prisoner's federally protected rights to medical care when medical treatment has been provided.  In Meloy v. Bachmeier, 302 F. 3d 845 (8th Cir. 2002),[5] a former inmate sued several prison doctors, a nurse, and the prison's medical director[6] for failing to provide him with a positive air pressure machine he claimed was necessary to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."  302 F. 3d at 847 citing, Camberos v. Branstad, 73 F. 3d 174, 176 (8th Cir. 1995).  Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer v. Kendall County, 220 F. 3d 805, 812 (7th Cir. 2000).  Finally, the court held:

---

[5] This Court has favorably cited Meloy on multiple occasions.  See, e.g. Smith v. Murphy, 2016 WL 7974660, *3 (N.D. Ala. 2016); Brown v. Smith, 2016 WL 6780355, at *13 (N.D. Ala. 2016); Cannon v. Mitchem, 2014 WL 1158983, *3 (N.D. Ala. 2014); Cowan v. Allen, 2012 WL 3042438, *5 (N.D. Ala. 2012).

[6] The medical director was a trained and licensed nurse.  302 F. 3d at 846.

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision.  Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F. 3d at 849.

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. See Vinnedge v. Gibbs, 550 F. 2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3rd Cir. 1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988)." Williams v. Limestone County, Ala., 198 Fed. Appx. 893, 897 (11th Cir. 2006).

Cameron v. Allen, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

The Plaintiff failed to produce any evidence that any of the Defendants are orthopedic surgeons or otherwise have the kind of medical education, training or expertise necessary to conduct a hip replacement surgery.  Commissioner Dunn, in fact, is not even a physician.  All three Defendants had to rely on the professional judgment of Dr. Thomas Powell – the orthopedic surgeon to whom the Plaintiff was referred.  Dr. Powell testified unequivocally that at no time did he inform any of the Defendants that the Plaintiff needed hip replacement surgery.  In fact, Dr. Powell testified that hip replacements are rarely necessary.  Dr. Powell further testified that

every time he has recommended an inmate for surgery – even hip replacement surgery – the inmate received the surgery.  As of the date of the trial, Dr. Powell had not ordered a hip replacement surgery for the Plaintiff.

Moreover, Plaintiff presented no evidence from any medical doctor licensed in Alabama, let alone an orthopedic surgeon, that the Plaintiff needs a hip replacement.  Plaintiff's expert, Dr. Cusick, who is not licensed in Alabama, testified:

- He never examined the Plaintiff;

- He never looked at any medical records of the Plaintiff;

- He never read the depositions of the treating physicians;

- His opinion was based solely on the Plaintiff's x-rays.

The record also contains evidence that one of Dr. Cusick's patients died as a result of the very surgery Plaintiff claims is a constitutional necessity.  The jury heard that Dr. Cusick could not even remember her name.

The Plaintiff wants the Court to find an Eighth Amendment violation on nothing more than a difference of opinion.  Here, the Court and the jury were faced with a difference of opinion between three licensed Alabama medical providers (one of whom was Plaintiff's non-party treating orthopedic surgeon), and an unlicensed (in Alabama) physician with a record of having at least one patient die from his performance of the procedure the Plaintiff seeks who had never so much as examined

18

the Plaintiff.  Leaving aside the weight of the medical evidence resting with the Defendants both quantitatively and qualitatively, a difference in medical opinion does not establish an Eighth Amendment violation.  Harris v. Thigpen, 941 F. 2d 1495, 1505 (11th Cir. 1991).

The record shows that the Plaintiff did receive treatment for his hip.  He was given medication.  He received an injection.  He received a cane.  He was allowed to use a wheelchair.  He received a yoga matt and access to an exercise bike.  In short, while the Plaintiff did not receive the elective treatment he wanted, he received the treatment he needed – which is all the Constitution requires.  City of Revere, 463 U.S. at 246.  There is therefore no reason to alter the judgment, order equitable relief, or conduct another trial.

## IV.   COMMISSIONER DUNN IS UNDER NO CONSTITUTIONAL DUTY TO INTERVENE IN THE MEDICAL DECISIONS OF TREATING PHYSICIANS.

Reduced to its essence, the Plaintiff's failure to intervene claim in Count III of the Amended Complaint (Doc 18) is that a prison commissioner with absolutely no medical training or experience is obligated to overrule not just the treatment decisions of department contracted medical doctors with over 100 years of combined experience, but he should also overrule the treatment decisions of the outside specialist to whom the inmate has been referred.  Based upon the undersigned's research, this novel theory has not been adopted by any court in the Eleventh Circuit.

To the contrary, this Court has held that prison officials are not under a duty to directly supervise medical personnel or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional deprivation.  Brown v. Smith, 2016 WL 6780355, at *13 (N.D. Ala. 2016) (citing Spruill v. Gillis, 372 F. 3d 218, 236 (3rd Cir. 2004)).[7]

That this Court should not abandon its own wise precedent is confirmed by considering the reverse of the present fact pattern.  Suppose Dr. Powell had ordered a hip replacement surgery and Commissioner Dunn refused to allow it.  Would this Court find that Commissioner Dunn – who is not a doctor, let alone an orthopedic surgeon – had the constitutional authority to do so?  It seems readily apparent that the Court would not hesitate to issue an order to Commissioner Dunn to follow the medical treatment plan set forth by the Plaintiff's treating physicians.  The same reasoning should follow with respect to the facts adduced at trial – a medically untrained prison official should not second guess the treatment plan of an inmate's treating physicians.

Given the novelty of the Plaintiff's failure to intervene theory, the court should consider the entirety of the body of law on failure to intervene claims.  Crucial in any analysis of a failure to intervene claim is the element that the defendant be in a position to prevent the constitutional violation.  See, e.g., Ensley v. Soper, 142 F. 3d

---

[7] Report and recommendation adopted, 2016 WL 6699298 (N.D. Ala. 2016)

1402, 1407 (11th Cir. 1998); Terry v. Bailey, 376 Fed. Appx. 894, 896 (11th Cir. 2014) (unpublished) ("in order for liability to attach, the officers must have been in a position to intervene.")  Commissioner Dunn, as a matter of law, is entitled to rely on the judgments of the Plaintiff's treating physicians.  Brown, 2016 WL 6780355, at *13.  The Plaintiff has proffered no evidence that Commissioner Dunn is a licensed medical doctor of any kind, let alone an orthopedic surgeon.  Commissioner Dunn has no admitting privileges in any hospital.  No doctor in Alabama is required to act on his "medical" orders.  Dr. Powell testified that he did not discuss Plaintiff with Commissioner Dunn or anyone else from ADOC regarding the need (or lack thereof) of a hip replacement for the Plaintiff.  By virtue of law, education, licensing, training, and experience, Commissioner Dunn was not in a position to intervene at any time.  Ensley, 142 F. 3d at 1407.

## V.     COMMISSIONER DUNN REMAINS AN IMPROPER PARTY.

Plaintiff argues that the Court should reverse its decision granting judgment as a matter of law to Commissioner Dunn simply because he can be sued in his official capacity as the Commissioner of the ADOC.  (Doc 161 at pp. 18-22.) Plaintiff's argument, and the cases he cites, conveniently ignores the fact that there must be both an underlying constitutional violation and an ability on the part of a defendant in his official capacity to provide the demanded relief.  For this reason, the Court should reject the Plaintiff's argument.

21

Plaintiff cites Ex Parte Young, 209 U.S. 123, 148 (1908) for the unremarkable proposition that state officials can be sued in their official capacity for injunctive relief "for ongoing violations of federal law." (Doc 161 at p. 19.)  It is the last phrase that renders Young inapposite to this case – as found by the jury the Plaintiff produced no evidence of an ongoing violation of federal law, specifically his Eighth Amendment rights.  Not only is the undisputed evidence that Commissioner Dunn had no subjective awareness of the Plaintiff, let alone his condition, the jury found that the Plaintiff's treating physicians were not deliberately indifferent and did not fail to intervene.  (Doc 156.)  There is no ongoing violation of federal law – *by anyone*.

Plaintiff's reliance on Braggs v. Dunn, 257 F. Supp. 3d 1171, 1265-66 (M.D. Ala. 2017) is also misplaced.  As an initial matter, in Braggs, there was a specific finding of an ongoing constitutional violation.  Id. at 1267-68.  As noted above, there was no such finding here.  Furthermore, in discussing Young, Judge Thompson wrote "the fact that the named defendants in their official capacities may need third parties' cooperation to carry out *some* of the potential remedies does not bar Ex parte Young's applicability, because the doctrine only requires 'some connection' between the alleged wrongdoing and the officials' responsibility."  Id. at 1266 (emphasis added).  In the instant case, the Commissioner would require the

cooperation of a third party – an orthopedic surgeon – for the *entirety* of the remedy sought by the Plaintiff.

Finally on this point, while it is the Commissioner's responsibility, *in general*, to ensure there is a system in place to provide medical care for inmates, the evidence in this case is that he has done so.   There was evidence produced at trial that the ADOC has a contract with Wexford Health Services to provide doctors and nurses to care for inmates committed to the custody of the ADOC.   The "connection" the Commissioner has is the one at issue in <u>Braggs</u> to provide a *system* of constitutionally adequate care for inmates.   It is also important to note that the medical and mental health services provider has *changed* since the <u>Braggs</u> decision.

Plaintiff's request for equitable relief here does not touch upon that general connection and responsibility.   The Plaintiff asserts that the Eighth Amendment violation at issue here is the deprivation of a *specific* remedy – hip replacement surgery.   Plaintiff demands that Commissioner Dunn not just provide a medical health system, but to override the treatment decisions of the providers within that system to provide him with a specific procedure.   Commissioner Dunn has no connection to this specific remedy.   In fact, he is about as removed from a connection to the specific remedy as he possibly can be – it is a Class C felony under Alabama law for Commissioner Dunn to perform such a surgery.   Ala. Code § 34-24-51, Practicing Medicine or Osteopathy Without a License.   Furthermore, as discussed

at length in Section III above, Eighth Amendment case law is replete with warnings to prison administrators not to interfere in the treatment decisions of an inmate's treating physicians.

## VI. PLAINTIFF'S EQUITABLE CLAIMS AGAINST COMMISSIONER DUNN DO NOT PRESENT A CASE AND CONTROVERSY AND AMOUNT TO NO MORE THAN A REQUEST FOR AN ADVISORY OPINION.

Plaintiff's claims against Commissioner Dunn do not present a case and controversy and seek, at best, an impermissible advisory opinion. "For subject matter jurisdiction to vest in a court, Article III of the United States Constitution requires that 'a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed.'" Lane v. Burrow, 192 F. Supp. 3d 1253, 1255 (N.D. Ala. 2016) (quoting United States v. Juvenile Male, 564 U.S. 932, 936 (2011)). An action must be dismissed if the Court determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Commissioner Dunn has not, at any time, had the power or constitutional duty to override the treatment decisions of the Plaintiff's medical providers. Brown, 2016 WL 6780355, at *13. Following this action Commissioner Dunn will *still* not have the ability to provide the Plaintiff with a hip replacement. Furthermore, as discussed above, the medical testimony adduced at trial showed that Commissioner Dunn never blocked a hip replacement surgery for the Plaintiff.

Thus, there are only two real question here with respect to the equitable relief Plaintiff demands from Commissioner Dunn: 1) "what happens if the Court orders a hip replacement and no doctor will perform it"; and 2) "what happens in the future if a doctor orders a hip replacement?"   These are hypothetical controversies the settling of which is not permitted under Article III of the United States Constitution. Preiser v. Newkirk, 422 U.S. 395, 401 (1975).   "[T]he Article III 'case or controversy' requirement mandates that the case be viable at all stages of the litigation; 'it is not sufficient that the controversy was live only at its inception.'" Brooks v. Ga. State Bd. of Elections, 59 F. 3d 1114, 1119 (11th Cir.1995) (citation omitted).   Federal court decisions "settling" hypothetical controversies are not binding on the parties.   R.T. Vanderbilt Co. v. Occupational Safety and Health Review Comm'n, 708 F. 2d 570, 576-77 (11th Cir. 1983) (citing Muskrat v. U.S., 219 U.S. 346, 362 (1911)).   Plaintiff can have no claim against Commissioner Dunn unless and until someone with the authority to order a hip replacement issues that order and Commissioner Dunn refuses to permit the surgery.   Id.

## VII.   PLAINTIFF LACKS STANDING TO RAISE AN EQUITABLE CLAIM AGAINST COMMISSIONER DUNN.

Similarly, a plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.   Baker v. Carr, 369 U.S. 186, 204 (1962).   The plaintiff must have sustained, or is about to sustain, some direct injury at the hands of the defendant.   Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).   "[E]very

court has an independent duty to review standing as a basis for jurisdiction *at any time, for every case it adjudicates*." Fla. Ass'n of Med. Equip. Dealers v. Apfel, 194 F. 3d 1227, 1230 (11th Cir. 1999) (emphasis added).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights. 461 U.S. 95, 97 (1983). The plaintiff sought an injunction barring the future use of police chokeholds. Id. at 98. After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing. Id. at 99-100. The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* be subjected to another chokehold. Id. at 108. The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. Id.

The Plaintiff is in an identical position as the plaintiff in Lyons. Any request for equitable relief rests solely on speculation that someone in the future *might* order a hip replacement for the Plaintiff, and Commissioner Dunn *might* refuse to allow the surgery to take place. However, unlike the defendant in Lyons who had control over its police officers, Commissioner Dunn has no authority to second guess the medical decisions of Dr. Roddam, Dr. Hood, Dr. Powell, or any other medical doctor – thus making the instant case even weaker than Lyons in terms of standing. There

is no evidence that Commissioner Dunn has ever blocked any ordered hip replacement surgery for the Plaintiff.  Until a hip replacement for the Plaintiff is ordered ***and*** Commissioner Dunn blocks the procedure, the Plaintiff does not have standing to obtain equitable relief from Commissioner Dunn.  <u>Lyons</u>, 461 U.S. at 108.

**CONCLUSION**

Based upon the foregoing, as well as the arguments set forth in the Opposition of Dr. Hood and Dr. Roddam, Commissioner Jefferson Dunn requests that the Court enter an Order denying the Plaintiff's motion.

Respectfully submitted,

/s/*Gary L. Willford, Jr.*
Gary L. Willford, Jr. (WIL198)
Assistant Attorney General
State of Alabama Department of Corrections
P. O. Box 301501
Montgomery, AL 36130-1501
*Attorney for Defendant, Jefferson S. Dunn,*
*Commissioner*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **December 14, 2018,** filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

Henry F. Sherrod, III, Esq.
HENRY F. SHERROD III, P.C.
119 South Court St., Suite 200
Florence, AL  35631-0606

Sarah Grady, Esq.
Arthur Loevy
Jon Loevy
Michael Kanovitz
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607

Bethany Rupert, Esq.
KING & SPALDING
2484 Brookdale Dr NE
Atlanta, GA 30345

Barry Goheen, Esq.
Coleen Schoch, Esq.
Bethany Rupert, Esq.
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309

s/ *Gary L. Willford, Jr.*
OF COUNSEL