# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES EDWARD BARBER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:15-cv-00997-JHE |
| | ) | |
| HUGH HOOD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On December 4, 2018, Barber moved for a new trial and to alter or amend the judgment. (Docs. 160 & 161).[2] Defendants Jefferson Dunn ("Dunn"), Dr. Hugh Hood ("Dr. Hood") and Dr. Roy Roddam ("Dr. Roddam," and, together with Dr. Hood, the "Doctors"; the Doctors are, together with Dunn, the "Defendants") oppose that motion, (doc. 163 & 164), and Barber has filed a reply in support, (doc. 165). Defendants have also filed a bill of costs, (doc. 166), which Barber has moved to strike, (doc. 167). Defendants oppose that motion. (Doc. 169). The motions are fully briefed and ripe for review. For the reasons stated below, Barber's motions are **DENIED**, and Defendants are awarded costs as set out below.

### I. Procedural History and Background

Barber is a death row prisoner suffering from end-stage osteoarthritis. This 42 U.S.C. § 1983 case is about Barber's allegation he was denied a hip replacement in violation of his Eighth

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 31).

[2] This memorandum opinion refers primarily to doc. 161, Barber's amended motion.

Amendment rights by the Doctors, who are physicians at the prison where Barber is incarcerated, and by Dunn, who is Commissioner of the Alabama Department of Corrections ("ADOC").

On March 30, 2018, the undersigned granted summary judgment to some of the defendants in this action on all of Barber's claims and denied it as to the Doctors and Dunn on some claims. (Doc. 82). Specifically, Barber's claims the Doctors and Dunn were deliberately indifferent in (1) denying him medical care and/or (2) by failing to intervene to ensure he received constitutionally adequate medical care survived summary judgment, with both claims proceeding against the Doctors for damages and injunctive relief and against Dunn (in his official capacity) for injunctive relief only. (*Id*.).

On May 9, 2018, the undersigned set this case for a pretrial conference. (Doc. 90). Prior to that conference, Barber moved to expedite a hearing on his claims for injunctive relief. (Doc. 91). In that motion, Barber argued the trial should bifurcated, and his claims for injunctive relief should be resolved at a bench trial prior to the jury trial on his claims for damages. (*Id*.). Although Defendants did not file any opposition to the motion, the undersigned set the motion for a hearing. (Doc. 93). Following the hearing, the undersigned directed the parties to brief issues related to Barber's motion. (Doc. 95). In his brief, Barber withdrew the request for separate trials, stating: "After reviewing the applicable case law, it is Plaintiff's position that this Court should order the jury trial to proceed as scheduled, and to permit the parties to simultaneously present evidence regarding the equitable and legal claims in the case, presenting evidence pertaining only [to] the equitable claims outside the presence of the jury during breaks." (Doc. 99 at 1). Accordingly, the undersigned denied Barber's motion. (Doc. 102).

Prior to trial, both parties filed motions in limine, (docs. 117, 118 & 119), most of which were opposed, (docs. 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 131 & 132). One of the

parties' joint motions in limine and one of Barber's motions in limine are relevant to this motion. In their sixth joint motion in limine, the parties requested they be barred, *inter alia*, from "making any disparaging remarks as to whether any party is represented by attorneys who come from 'out of town.'" (Doc. 118 at 1). In Barber's first motion in limine, he sought to bar evidence that he had been convicted of murder and sentenced to death. (Doc. 119 at 2-8). The undersigned granted the sixth joint motion in limine as agreed, (doc. 139 at 3), and Barber's first motion over Defendants' objections, (*id.* at 19-24).

The case went to trial on October 29, 2018. Barber called eleven witnesses in his case-in-chief. Following direct examination by counsel for Barber and cross-examination by counsel for the Doctors, counsel for Dunn questioned three of these witnesses outside the presence of the jury: orthopedic surgeon Dr. Thomas Powell, Dr. Hood, and Barber's expert, Dr. Robert Cusick (who is also an orthopedic surgeon). Barber's counsel took advantage of her opportunity to conduct redirect examination of Dr. Powell outside the jury's presence, but had no additional questions for Dr. Cusick or Dr. Hood.

On October 31, 2018, after Barber rested, Defendants moved for judgment as a matter of law. (Doc. 150). After oral argument by the parties, the undersigned orally denied the motion as to the Doctors, but granted it as to Dunn. The undersigned stated on the record that Barber had not produced sufficient evidence with respect to Dunn for either Eighth Amendment claim.

Following that ruling, the Doctors began their case-in-chief. After calling several other witnesses, the Doctors called Warden Leon Bolling ("Warden Bolling"). The following exchange took place:

Q:      But you never had the concern because you were never told of any problems
        by anybody that Mr. Barber was having any, any concerns?

A:      No, sir.  I didn't have no issues with other inmates in that unit, that, uh, death row inmates, uh, his name is Willie Minor . . . .

Defense counsel finished direct examination of Warden Bolling shortly after this testimony.  Before Barber's counsel cross-examined Warden Bolling, she requested a sidebar and informed the court that she had heard the words "death row inmates" in violation of the ruling in limine.  Neither the undersigned, nor defense counsel, nor the court reporter had heard the phrase, so the undersigned advised the parties he would return to chambers to listen to the recording of the proceedings and determine if the phrase had been said.  After listening to the recording several times, the undersigned confirmed Warden Bolling had said the words "death row," albeit indistinctly.  In chambers, the undersigned reviewed the recording with counsel.

Barber's counsel then moved for a mistrial on the jury trial portion of the case, but to continue on the claims for injunctive relief.   The parties also discussed the propriety of a limiting instruction, but Barber rejected this idea because it could call attention to the testimony rather than curing its effects.  The undersigned denied the motion for a partial mistrial, and Barber moved for a mistral on all aspects of the case.  Based on the fact Warden Bolling's mention of "death row" was muffled and only clearly audible after playing back the recording several times with the knowledge it had been said, the undersigned concluded the jury had likely not heard the phrase.  Further, the undersigned concluded the instruction to the jury that they should not consider his status as a prisoner was sufficient to mitigate the prejudice even if the jury had heard "death row."  Accordingly, the undersigned denied the motion for a mistrial.

The defense called its final witnesses and rested.  When Barber declined to call rebuttal witnesses, the Doctors renewed their motion for judgment as a matter of law; the undersigned denied that motion.  After finalizing jury instructions, the parties gave closing arguments.  During

the defense's closing argument, defense counsel characterized the Doctors as saying "we are being accused of all of this stuff by these lawyers from Chicago and Atlanta" and referred to interpreting evidence "like the lawyers from Chicago thought that you interpreted it."  Barber's counsel objected to the second of these on the basis that the ruling in limine on the parties' sixth joint motion prohibited argument about attorneys from "out of town"; defense counsel asserted his comments had not been disparaging and did not fall within the ruling.  The undersigned sustained the objection, and defense counsel did not mention Chicago or Atlanta again.

On November 2, 2018, the jury rendered a verdict for the Doctors.  (Doc. 156).  After dismissing the jury, the undersigned spoke with the members of the jury collectively and asked them whether they had heard a witness use the words "death row" at any point during the trial.  Several jurors affirmatively stated they had not, and no juror indicated he or she had heard "death row" mentioned.  The undersigned entered final judgment on that verdict on November 6, 2018, taxing costs against Barber.  (Doc. 157).

On December 4, 2018, Barber filed the instant motion and amended motion for a new trial and/or to alter or amend the judgment.  (Docs. 160 & 161).  After the motion was fully briefed, (*see* docs. 163, 164 & 165), Defendants filed a bill of costs on January 3, 2019.  (Doc. 166).  Barber then moved to strike the bill of costs as untimely filed.  (Doc. 167).

## II. Analysis

### A. Motion for New Trial and/or to Alter or Amend Judgment (Doc. 161)

Barber's post-judgment motion is premised on three alleged errors.  First, Barber claims the undersigned mistakenly granted Dunn's motion for judgment as a matter of law because it was made pursuant to the inapplicable Rule 50 and did not comply with the applicable Rule 52.  (Doc. 161 at 1-2).  Overlapping with this to some extent is Barber's argument that the court should grant

injunctive relief notwithstanding the verdict. (*Id.* at 13-17). Second, Barber alleges he is entitled to a new trial due to Warden Bolling's invocation of "death row" in violation of the ruling in limine. (*Id.* at 2). Finally, Barber contends defense counsel's remarks about "Chicago" violated the undersigned's ruling in limine and rendered the trial unfair. (*Id.*).

## 1. Motion to Alter or Amend the Judgment

Barber argues the judgment should be altered or amended pursuant to Fed. R. Civ. P. 59(e). That Rule "provides no specific grounds for relief, and 'the decision to alter or amend judgment is committed to the sound discretion of the district judge.'" *Taylor v. First N. Am. Nat. Bank*, 331 F. Supp. 2d 1354, 1355 (M.D. Ala. 2004) (quoting *American Home Assur. Co. v. Glenn Estess & Assocs., Inc.,* 763 F.2d 1237, 1238–39 (11th Cir. 1985)). "Only three grounds are available to support the motion: (1) manifest error of fact; (2) manifest error of law; or (3) newly discovered evidence." *In re Daughtrey*, 896 F.3d 1255, 1280 (11th Cir. 2018) (citation omitted).

Barber does not directly state it, but his motion appears to be premised on the second ground: in his view, the judgment constitutes a manifest error of law because (1) the undersigned erroneously granted the motion for judgment as a matter of law and (2) the court could, and should, still grant injunctive relief for Eighth Amendment violations irrespective of the jury's verdict.

### a. Motion for Judgment as a Matter of Law

Barber argues the undersigned erroneously granted Dunn's motion for judgment as a matter of law because the motion was brought pursuant to Fed. R. Civ. P. 50, which is not available in nonjury proceedings, and the undersigned did not comply with the requirements of Fed. R. Civ. P. 52.[3] (Doc. 161 at 11-13). Under Rule 52,

---

[3] The motion for judgment as a matter of law (which was filed on behalf of all Defendants) purports to be a Rule 50 motion. (*See* doc. 150 at 1). Rule 50 does not apply to claims not tried to

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue . . . . A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

FED. R. CIV. P. 52(c).

Barber states the undersigned "did not provide analysis of [his] decision" to grant judgment as a matter of law to Dunn. (Doc. 161 at 12). However, Rule 52 permits the court to state findings of fact and conclusions of law on the record in the alternative to presenting them in an opinion or memorandum. FED. R. CIV. P. 52(a)(1). The undersigned did so, stating at the close of Barber's case-in-chief that Barber had presented no evidence with respect to Dunn. Barber concedes he did not present any evidence with respect to Dunn. (Doc. 161 at 7, 12).

Barber argued (and maintains) he "did not need to put forward any evidence as to the equitable claim during the jury trial portion of the case." (Doc. 161 at 7). Barber's post-trial understanding of matters is contradicted by his pre-trial understanding. As discussed above, Barber withdrew his request to proceed as he now claims. Specifically, Barber stated the following:

> In its July 11 Order, the Court posed four related questions regarding concerns about Plaintiff's claim for an expedited hearing on his equitable claims for injunctive relief. Those questions concerned the Court's ability to order separate hearing on Plaintiff's equitable and legal claims, and the proper order of any such separate trials. After reviewing the applicable case law, it is Plaintiff's position that this Court should order the jury trial to proceed as scheduled, and to permit the parties to simultaneously present evidence regarding the equitable and legal claims in the case, presenting evidence pertaining only [to] the equitable claims outside the presence of the jury during breaks. The Court should then permit the jury to

---

a jury, *see Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877, 884 (11th Cir. 2010), so it was not the appropriate avenue to address Dunn's claims. However, a motion is controlled by the relief it requests, not its style, *Lucas v. Florida Power & Light Co.*, 729 F.2d 1300, 1301 (11th Cir. 1984), and Barber's subsequent discussion of whether the undersigned correctly followed Rule 52 appears to concede this point.

render its verdict on Plaintiff's legal claims before reaching its own determination about Plaintiff's equitable claims for an injunction.

[. . .]

Allowing for simultaneous presentation of the evidence, and presentation of additional equitable evidence during breaks in the jury trial, will promote judicial economy, preventing the Court, the parties, and third-party witnesses from having to attend a second trial after the jury reaches its verdict on the legal claims in the case. *See Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1314 (N.D. Ala. 2012) (discussing various ways to resolve legal and equitable claims, including simultaneous bench and jury trials.)

(Doc. 99 at 1, 4).

The trial proceeded exactly as envisioned by Barber. Barber's counsel had an opportunity to excuse the jury and elicit evidence relevant to his claims against Dunn during his case-in-chief, but he elected not to do so. And when Dunn's counsel requested the jury be excused for questioning related to the claims against Dunn, Barber's counsel also declined to question the witnesses. As a result, as Barber himself admits, Barber adduced no evidence to support Dunn's involvement in, responsibility for, or authority to remedy any Eighth Amendment violations.

Barber states Dunn has the authority to provide the equitable relief requested, and that the undersigned can take judicial notice of that fact. (Doc. 161 at 18-22). To support this, Barber marshals a variety of cases standing for the proposition that an official-capacity claim for injunctive relief is appropriate against Dunn because Dunn oversees ADOC, which itself is responsible for ensuring constitutionally adequate medical care. (See *id.*) (citing, e.g., *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988); *Quintanilla v. Bryson*, 730 F. App'x 738, 748 (11th Cir. 2018); *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011); *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1265 (M.D. Ala. 2017)). The majority of these cases deal with immunity to suit under the Eleventh Amendment and the application of the *Ex Parte Young* doctrine, both of which the

parties argue about, (*see* doc 161 at 18-22; doc. 163 at 21-24), but neither of which underpinned the decision to grant Dunn's motion for judgment as a matter of law. Barber presented no evidence Dunn could provide (or block) the relief he seeks, i.e., that the ADOC Commissioner can order or forbid specific medical treatment provided by the contractor by whom the Doctors are employed.

Barber has not shown any reason why his decision to decline to present evidence to support his claims against Dunn requires the judgment to be altered or amended. However, even assuming the undersigned was required (and not merely permitted) to take judicial notice of Dunn's ability to provide the treatment Barber seeks through his control of ADOC[4] and that it was error to grant Dunn's motion, relief under Rule 59(e) is unwarranted because Barber is not entitled to injunctive relief in any event, as discussed further below.

### b. Injunctive Relief Notwithstanding the Verdict

Barber argues the undersigned should revisit the judgment and grant injunctive relief notwithstanding the jury's verdict. (Doc. 161 at 13-18). As previously noted, (doc. 82 at 23), injunctive relief is not a standalone claim. *See Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("There is no such thing as a suit for a traditional injunction in the abstract."). Instead, it is a "remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). "[T]o obtain a permanent injunction, a party must show: (1) **that he has prevailed in establishing the violation of the right asserted in his**

---

[4] Although no party addressed whether judicial notice was mandatory as opposed to permissive, it is possible judicial notice may have been required under Fed. R. Evid. 201(c)(2), assuming Dunn's authority could be considered an adjudicative fact.

**complaint**; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." *Army Corps of Engineers*, 424 F.3d at 1128 (emphasis added).

When equitable and legal claims are tried together in a case with a jury demand (such as this one), "the [Seventh Amendment] right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990). "Under the flexible procedures of the Federal Rules, a jury determines issues pertinent to an equitable cause without interruption or prejudice to the proceeding; the court decides whether equitable relief is called for on the basis of the jury's findings of fact." *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 490 (5th Cir. 1961).[5]  In other words, "all findings necessarily made by the jury in awarding [a] verdict to [a party on legal claims] are binding on . . . the trial court when it sits in equity." *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1184 (11th Cir. 2010) (citation omitted).  When the legal and equitable claims do not overlap, however, the jury's verdict is merely advisory as to equitable issues.  *Id.* at 1185 n.11 (citation omitted).

The problem for Barber is the jury necessarily found neither of the Doctors violated Barber's constitutional rights.  Although the jury returned its verdict on a general verdict form (proposed by Barber, incidentally), the form separates out the issue of each constitutional right from the issue of damages.  (*See* doc. 156 at 1-2).  Following the instructions provided to them, the jury's rejection of Barber's denial of necessary medical care claim would necessarily be

---

[5] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

premised on the absence of one of the following elements: (1) "Barber had a serious medical need"; (2) the defendant in question "knew that Barber had a serious medical need that posed a risk of serious harm"; (3) the defendant in question "failed to provide necessary medical care for Mr. Barber's serious medical need in deliberate indifference to the risk of serious harm";[6] (4) the defendant in question's "conduct caused Mr. Barber's injuries." (Doc. 155 at 5). And the jury would necessarily have found one of the following elements absent as to Barber's failure to intervene claim: (1) "Barber was denied adequate medical care in violation of his Eighth Amendment rights"; (2) the defendant in question "actually knew that Mr. Barber was being or was about to be denied his constitutional right to medical care"; (3) the defendant in question "had a realistic opportunity to do something to prevent harm from occurring"; (4) the defendant in question "failed to take reasonable steps to prevent harm from occurring"; (5) the defendant in question's "failure to act caused Mr. Barber to suffer harm" (*id.* at 6-7). Only after concluding no constitutional violation occurred, (doc. 156 at 1), would the jury proceed to calculate of Barber's damages, (*id.* at 2).

Barber's own examples illustrate the problem with his interpretation. He states "the jury's verdict in favor of Hood and Roddam might have been based on a finding that Defendants' actions toward Mr. Barber did not cause him to suffer harm." (Doc. 161 at 15) (citing the fourth element of the deliberate indifference instruction and the fifth element of the failure to intervene instruction). If Barber did not suffer an injury, there is no constitutional violation to support injunctive relief. *See, e.g., Butler v. Prison Health Servs., Inc.*, 294 F. App'x 497, 499 (11th Cir. 2008) (affirming district court's dismissal of § 1983 deliberate indifference complaint where

---

[6] The parties stipulated to the fifth element: that both doctors acted under color of law. (Doc. 155 at 5).

plaintiff alleged no injuries). There is no way that Barber could show "irreparable harm" to support injunctive relief when the jury has found Barber was not harmed by the Doctors' actions. Further, since the failure to intervene claim is premised on an Eighth Amendment denial of necessary medical care violation, it is immaterial which one of the elements of that claim the jury found lacking when they also found neither defendant deprived Barber of necessary medical care.

The verdict form in this case is more helpful to the court than the one in *Burton v. Armontrout*, 975 F.2d 543 (8th Cir. 1992), the Eighth Circuit case Barber cites for the proposition that a permanent injunction may follow even when a jury finds a defendant is not liable for damages. (Doc. 161 at 14). In *Burton*, the court noted that the structure of the general verdict form listed seven elements the plaintiffs had to establish to show a constitutional violation. *Burton*, 975 F.2d at 545. The court found "the jury may have believed the defendants were recklessly indifferent to the health needs of the inmates and still found for the defendants because the inmates suffered no damages." *Id.* But that would not have been possible here, because the form contemplates that a jury could find for Barber on the issue of a constitutional violation, but still conclude he had suffered no compensable damages. *See Fair Hous. Ctr. of Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, 164 F. Supp. 3d 1375, 1390 (S.D. Fla. 2016), *aff'd sub nom. Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, 682 F. App'x 768 (11th Cir. 2017) (finding injunctive relief precluded when "the jury did *not* find that a Defendant was liable and owed zero damages" but instead "found no liability whatsoever."). Similarly, Barber's reliance on *Brown*, 597 F.3d 1160, is misplaced. In that case, the jury awarded the plaintiff mental anguish damages based on one or more of two independent claims, each of which could have supported the award. *Id.* at 1184. Here, however,

the jury made clear findings that neither doctor violated Barber's Eighth Amendment rights on either theory he advanced.

As Dunn notes, the only avenue through which the jury could have found the Doctors did not violate Barber's constitutional rights but Dunn could nonetheless be held liable would be if the jury found neither doctor was not subjectively aware of Barber's serious medical need, but the evidence supported Dunn was. (Doc. 163 at 14). However, even assuming the jury had based their decision on that finding (a finding which, in the face of the evidence presented, no reasonable jury could have made), Barber presented no evidence to support Dunn's subjective awareness of Barber's condition.[7] Nor does he suggest the court could take judicial notice of that fact. In this narrow case, the jury's verdict would be advisory and not binding on the court. That said, "[w]hen a court hears equitable claims in conjunction with claims heard by a jury, the judge's findings must be consistent with the jury's verdict." *Fair Housing Center*, 164 F. Supp. 3d at 1391 (citing, e.g., *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992); *In re Lewis*, 845 F.2d 624, 628–30 (6th Cir. 1988). Assuming a reasonable jury, it would be inconsistent with the verdict to conclude Dunn—but not Dr. Hood or Dr. Roddam—was subjectively aware of Barber's osteoarthritis and violated Barber's Eighth Amendment rights by his deliberate indifference. To the extent the jury's verdict is merely advisory, the undersigned finds it to be persuasive, and, consistent with the verdict, equitable relief is unwarranted.[8] Barber's motion is **DENIED** to the extent it seeks relief under Rule 59(e).

---

[7] In fact, both Dr. Hood and Dr. Powell Barber testified they had not discussed Barber's condition with Dunn. Dunn's counsel did not question Dr. Roddam.

[8] Barber spends a portion of his motion arguing that the evidence supports his claim for injunctive relief, largely by rehashing his arguments and evidence at summary judgment. (Doc. 161 at 15-18). As part of his support for this idea, Barber attempts to rely on a consultation request from Dr. Roddam to Dr. Hood in which Dr. Roddam requested a total hip arthroplasty after a failed

## 2. Violations of Rulings in Limine

Barber argues both of the evidentiary violations he identifies require a new trial. Under Rule 59(a)(1)(A), the court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." A losing party may contend a new trial is required on the grounds that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Del Rio Dist. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979).

---

steroid injection, but noted "[w]hether approved is another issue since he is on death row." (Doc. 161 at 16). From this request, Barber derives that "Defendant Roddam was fully aware and believed in the pain Mr. Barber was experiencing; yet, he hypothesized that the treatment might not be provided to a death row prisoner." (*Id.*). Although the consultation request was part of the summary judgment record, (*see* doc. 82 at 8) (citing doc. 79-1 at 76), Barber elected to (successfully) move in limine to exclude evidence relating to death row, (*see* doc. 119 at 2-8), excluding this document from the jury's consideration as a matter of trial strategy. Barber could also have referenced the consultation request during the portions of the trial reserved for equitable issues only, but declined to do so. The consultation request is not part of the trial record, and Plaintiff cannot rely upon it. *Cf. Howell v. Burden*, 12 F.3d 190, 192 n.2 (11th Cir. 1994) (distinguishing between the summary judgment record and the trial record).

### a. "Death Row" Statement

The more troubling of the two violations Barber alleges is Warden Bolling's reference to "death row."[9]  In the ruling in limine, the undersigned found references to "death row" were problematic for several reasons: (1) they might cause the jury to conclude Barber's death sentence makes him less worthy of care or that providing care for Barber would be a waste of the state's money; (2) they might invite jurors to decide the case based on their perceptions of capital punishment; and (3) there was little probative value to be gained from it that evidence of the specific nature of Barber's conviction would not supply.  (Doc. 139 at 21-22).  The undersigned concluded the nature of Barber's conviction would also be unduly prejudicial in this case, ultimately "sanitizing" the conviction by limiting the defense to presenting "evidence that Plaintiff was convicted of a felony, the number of felonies of which Plaintiff was convicted, and the date of Plaintiff's conviction."  (*Id.* at 22-24).

Warden Bolling's testimony clearly runs afoul of that ruling.  However, as discussed above, the undersigned notes the single reference to "death row" was muffled and missed as an initial matter by the undersigned, defense counsel, and even the court reporter.  Further, the fact Warden Bolling actually says the words "death row" is only apparent after listening to the audio recording multiple times.  Nothing in Barber's motion alters the undersigned's conclusion that the jury likely did not hear the words or understand them to be the words "death row."

---

[9] The Doctors' opposition brief states Warden Bolling "denies having made any such remark."  (Doc. 164 at 8).  This secondhand report is not evidence.  *United States v. Smith,* 918 F.2d 1551, 1562 (11th Cir. 1990) ("[S]tatements and arguments of counsel are not evidence.").  Even if defense counsel had produced an affidavit from Warden Bolling attesting he did not say "death row," the audio recording of the proceedings is dispositive of the issue.  Warden Bolling said the phrase.  The only question now is what (if anything) to attribute to it.

The undersigned finds this sufficient by itself to conclude Barber suffered no prejudice from Warden Bolling's testimony. But there is additional evidence to support the jurors did not hear the offending phrase. The Doctors have attached to their response an affidavit from the jury foreman in which she states "[a]t no time did I hear any of the witnesses, specifically Warden Leon Bowling [sic], reference the fact that the plaintiff, James Barber, was on death row, or imply whatsoever that Mr. Barber was on death row." (Doc. 164-1 at 3, ¶ 3). The foreman also notes that after the trial, the undersigned "questioned all of the jurors collectively and asked if any juror had heard any witness reference death row or use the words 'death row' to indicate that Mr. Barber was on death row. All of the jurors informed the [undersigned] that they had never heard any witness state the words 'death row' when referring to Mr. Barber or indicating that Mr. Barber was housed on death row." (*Id.* at 3, ¶ 5). The jury foreman's description of the undersigned's post-trial discussions with jurors is consistent with the undersigned's recollection. The upshot is that not only was it unlikely that the jurors heard the words "death row" based on the circumstances present at the time the undersigned denied Barber's motion for a mistrial, subsequent evidence provides an affirmative basis to conclude they did not hear them.[10]

---

[10] Barber suggests the court is forbidden to examine the jury foreman's affidavit due to Fed. R. Evid. 606. (Doc. 165 at 7-8). In relevant part, that Rule provides:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

FED. R. EVID. 606(b)(1). The Rule goes on to list three exceptions, none of which apply in this case.

Assuming Barber's motion for a new trial is "an inquiry into the validity" of the verdict— and it appears it is, *see Warger v. Shauers*, 574 U.S. 40 (2014)—the Rule only clearly applies to one paragraph of the jury foreman's affidavit, in which she notes "[n]one of the other jurors stated

Because the undersigned concludes the jury likely did not hear the words "death row," any violation of the ruling in limine was harmless. The undersigned also notes the jury instructions state: "A party's status must not affect your decision in any way. Prisoners, physicians, and all persons stand equal before the law and must be dealt with as equals in a court of justice. The jury is instructed that they are not to draw any negative inferences from the plaintiff's status as a prisoner." (Doc. 155 at 2). While the undersigned concludes the jury likely did not hear the words "death row," a juror who **did** hear them is presumed to have followed this curative jury instruction. *See United States v. Simon,* 964 F.2d 1082, 1087 (11th Cir. 1992). Accordingly, the trial was not rendered unfair to Barber by Warden Bolling's reference to "death row." Barber's motion is **DENIED** as to a new trial premised on the "death row" reference.

### b. References to Chicago

Barber's final argument for a new trial is that the Doctors' counsel's references to "Chicago" disparaged his counsel and affected the jury. (Doc. 161 at 24-25). The jointly-agreed-upon request for a ruling in limine states: "The parties will be barred from arguing or making

---

during deliberations that they had overheard Warden Bowling [sic] or any other witness state or reference the fact that Mr. Barber was on death row." (Doc. 164-1 at 3, ¶ 4). The undersigned has not considered this paragraph. However, the remainder of the affidavit deals with the factual questions of (1) what the foreman heard in open court, (*id.* at 3, ¶ 3); and (2) what the jurors stated to the undersigned following the verdict, (*id.* at 3, ¶ 5). While the first of these conceivably touches on a matter that could have influenced the verdict—i.e., the knowledge of whether Barber was on death row—it does not fit squarely within the Rule's prohibitions because it did not occur during deliberations, does not concern "the effect" of whether the foreman heard "death row" during the trial on the verdict, and has nothing to do with the foreman's mental processes concerning the verdict. *See Isaacs v. Kemp*, 778 F.2d 1482, 1485 n.6 (11th Cir. 1985) (finding juror testimony as to "historical, objective fact" that she attended substantial portion of trial "clearly outside" earlier version of Rule 606(b) because it did not concern jury deliberations or juror's mental processes"). The second factual question postdates the verdict and serves, at maximum, to duplicate the undersigned's own observation of the same thing the foreman's affidavit describes: the jurors' statements about a historical fact during the trial. The undersigned concludes he is not prohibited by the Rule from considering either paragraph 3 or 5 of the foreman's affidavit.

reference to the number of attorneys representing any party, and making any disparaging remarks as to whether any party is represented by attorneys who come from 'out of town.'" (Doc. 118 at 1, ¶ 6).

The Doctors argue their counsel adhered to the strict letter of the ruling in limine by making only non-disparaging references to Chicago. Leaving aside that the references unquestionably violated the ruling's spirit, the undersigned cannot discern any reasonably appropriate and non-disparaging justification for counsel's references to Chicago and/or Atlanta, and the Doctors do not offer one beyond characterizing them as "[s]imple, factual statements regarding the location of counsel's office," (doc. 164 at 9). The court cannot blind itself to the context of these remarks: juxtaposing the foreign meddling of out-of-state lawyers against the medical judgment of local doctors.

Nevertheless, the bar is high. In cases of attorney misconduct, courts consider "whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992). The misconduct must be such that it would "impair gravely the calm and dispassionate consideration of the case by the jury." *Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1213 (11th Cir. 1993). The court "look[s] to the entire argument, the context of the remarks, the objection raised, and the curative instruction." *Gonzalez v. Batmasian*, 734 F. App'x 677, 682 (11th Cir. 2018) (quoting *Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988)).

Applying this standard, there is no reason to conclude counsel's statements rendered the trial unfair. First, Barber's attempt to show harm from the references to Chicago is his contention "several jurors openly laughed" when his counsel asked for a sidebar after objecting to the references to Chicago. (Doc. 161 at 24). However, there is no audible laughter on the audio

recording of the proceedings and, and the jurors' alleged open laughter is not consistent with the undersigned's recollection of the trial. Second, these isolated remarks are not the kind of repeated violations that permeate the proceedings. *See, e.g., Fineman*, 980 F.2d at 207 (noting plaintiff's counsel had "improperly testified to his own truthfulness and trustworthiness, supplied 'facts' not in evidence about the credibility of [defense] witnesses, accused [defense] witnesses of being 'liars' and 'perjurers,' and levied 'an unadorned, disparaging attack' upon defense counsel throughout his summation"). Finally, to the extent that Barber suffered any prejudice from the references to Chicago, the jury instructions cured that prejudice. The undersigned instructed the jury at several points that counsel's arguments are not evidence and should not be considered in deciding the case:

> As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.
>
> [. . .]
>
> Ladies and Gentlemen of the Jury, I remind you once again that the arguments of counsel are not evidence in this case. The court allows counsel to make closing arguments or summations to help you recall the evidence and to help you tie the evidence together. You should not substitute what the lawyers say about the evidence for your own recollection. You must decide the case based solely on your view of the facts as you find them to be from the evidence and applying the law to those facts as I have instructed you.
>
> [. . .]
>
> Remember, as I told you earlier, the only information you should use to decide this case is the evidence presented and the law explained in this courtroom.

(Doc. 155 at 2, 8-9). As noted above, the jury is presumed to follow these instructions. *Simon,* 964 F.2d 1082, 1087. Accordingly, a new trial is not warranted on this basis, and Barber's motion is **DENIED**.

**B. Motion to Strike Bill of Costs (Doc. 167)**

Barber contends Defendants' bill of costs, (doc. 166), is untimely and seeks to recover improper categories of costs. (Doc. 167).

**1. Timeliness**

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." However, it does not fix a deadline for a party to file a bill of costs. Instead, district courts generally impose such limits through local rule. *See, e.g., Anderson v. Techtronic Indus. N. Am., Inc.,* No. 6:13-CV-1571-ORL, 2015 WL 4459029, at *1 (M.D. Fla. July 20, 2015). In this district, the local rules require that "[r]equests for taxation of costs (other than attorneys' fees) under Fed. R. Civ. P. 54(d) shall be filed with the Clerk within 21 days after entry of judgment." L.R. 54.1.

Barber's basis for striking the bill of costs is that Defendants filed it well after the 21-day time limit set by the local rules. (Doc. 167 at 1). The problem for this argument is that a Rule 59 motion "operates to suspend the finality of the district court's judgment 'pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties.'" *Members First Fed. Credit Union v. Members First Credit Union of Fla.,* 244 F.3d 806, 807 (11th Cir.2001) (quoting *Browder v. Dir., Dep't of Corr.,* 434 U.S. 257, 267 (1978)). Barber effectively concedes this point, but contends the deadline to file a bill of costs had already passed and could not be revived by a post-trial motion. (Doc. 167 at 3). This misses the mark, and although Barber cites *Members First* and *Browder* in support, neither really speak to this issue. *Members First* made no mention of a lapsed time for filing a motion. *See Members*

*First*, 244 F.3d at 807. *Browder* does discuss timeliness, but it is in the context of stating that a motion must be timely filed for it to toll a deadline. *See Browder*, 434 U.S. at 268-69. But it is **<u>Barber's</u>** timely-filed Rule 59 motion that does the tolling in this case; Defendants' bill of costs is simply piggybacking on the tolling created by that motion. The practical effect is that Defendants' bill of costs would have been untimely had Barber not filed his Rule 59 motion, but because he chose to do so, he gave Defendants a new window in which to file a bill of costs.

Although it is unpublished, *Galdames v. N & D Inv. Corp.*, 432 F. App'x 801 (11th Cir. 2011) is nearly identical to this case. In *Galdames*, the losing defendants timely filed post-trial motions. *Id. at* 805. While those motions were pending—and 68 days after the judgment was entered—the prevailing plaintiffs moved for attorney's fees. *Id.* On appeal, the defendants challenged the district court's fee award on the basis that the district required a motion for attorney's fees to be filed thirty days after the entry of a final judgment. *Id.* The Eleventh Circuit upheld the award. It stated:

> While it is uncontested that Plaintiffs moved for attorneys' fees 68 days after the district court entered judgment, Defendants fail to appreciate that their timely Rule 59 motion extended Plaintiffs' deadline for requesting attorneys' fees. In other words, Plaintiffs could have filed a timely motion for attorneys' fees up to 30 days after the district court ruled on Defendants' new trial motion. As Plaintiffs filed their motion before the court's March 2010 denial of defendant's post-trial motion, it was necessarily timely.

*Id.* The same is true here: Defendants' bill of costs is necessarily timely because the undersigned had not yet ruled on Barber's post-trial motion. Accordingly, the court need not consider Barber's arguments that the bill of costs' untimeliness cannot be excused on equitable grounds, and Barber's motion to strike the bill of costs in its entirety is **DENIED**.

## 2. Recoverability of Costs

Barber's final challenge is that the bill of costs seeks to recover nontaxable costs.[11] (Doc. 167 at 4). Under 28 U.S.C. § 1920, a judge may tax any of the following as costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." When a prevailing party shows costs are allowable under § 1920, the losing party must rebut the presumption favoring the award by presenting a rationale under which costs should not be allowed. *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991); *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 958 (8th Cir. 2007). A court may decline to allow any of these costs, but may not allow costs not enumerated in § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987)

---

[11] Even though he does not raise it as a justification for reducing costs, the undersigned notes Barber is proceeding *in forma pauperis*. (*See* doc. 3). While "a non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d)," binding precedent in this circuit holds a non-prevailing party's indigence alone is not enough to support a reduction in the amount of costs taxed against him. *Chapman v. AI Transport*, 229 F.3d 1012, 1038-39 (11th Cir. 2000). Instead, a district court needs a "sound basis" to overcome the strong presumption that costs should be awarded to the prevailing party, and as such "should require substantial documentation of a true inability to pay" if it chooses to take a party's financial situation into account. *Id.* at 1039. This is true even when the non-prevailing party is a prisoner proceeding IFP. *Mathews v. Crosby*, 480 F.3d 1265, 1266–67 (11th Cir. 2007). Barber has not provided any such "substantial documentation," and the undersigned has not consider his IFP status.

22

Defendants seek a total of $6,009.71 in costs. (Doc. 166 at 1). This consists of $5,969.71 in "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" and $40.00 in "fees for witnesses" (specifically, Dr. Thomas Powell). (*Id.* at 1-2). Supporting the total for transcripts, Defendants break down the $5,969.71 figure by deposition, (doc. 166-1 at 1), and provide invoices for each deposition, (*id.* at 2-11). Barber's specific objections are to appearance fees for court reporters[12] and "various court reporter fees," including "'processing fees,' fees for scanning exhibits and creating exhibit tabs, and fees for providing a digital transcript, a condensed transcript, and a 'depo disk.'" (Doc. 167 at 4).

As Defendants acknowledge, (doc. 169 at 3-4), there is conflicting authority in the Eleventh Circuit as to whether court reporter appearance fees are recoverable under § 1920. *Compare Brown v. Riedl*, No. 3:13-CV-36-J-34PDB, 2017 WL 9360887, at *2 (M.D. Fla. Jan. 18, 2017), *report and recommendation adopted in relevant part,* No. 3:13-CV-36-J-34PDB, 2017 WL 1161306 (M.D. Fla. Mar. 29, 2017) (court reporter attendance fees not recoverable); *Shire Dev., LLC v. Mylan Pharm., Inc.*, No. 8:12-CV-1190-T-36AEP, 2018 WL 6311472, at *4 (M.D. Fla. Nov. 9, 2018), *report and recommendation adopted in part,* No. 8:12-CV-1190-T-36AEP, 2018 WL 6304868 (M.D. Fla. Dec. 3, 2018) (same) *with Joseph v. Nichell's Caribbean Cuisine, Inc.*, 950 F. Supp. 2d 1254, 1258-59 (S.D. Fla. 2013) (court reporter attendance fees recoverable as costs associated with preparing the transcript); *Sutton v. Royal Caribbean Cruise Line*, No. 16-24707-CIV, 2018 WL 4282843, at *4 (S.D. Fla. Sept. 7, 2018) (same). Discussing this split in the context of the 2008 amendment to § 1920 (which changed § 1920(2) from fees "of the court

---

[12] Barber does not specifically identify these, but this appears to refer to $120.00 for Barber's deposition, (doc. 166-1 at 2) and $70.00 for Dr. Robert Cusick's deposition, (*id.* at 6), a total of $190.00.

reporter" for the transcript to fees "for printed or electronically recorded transcripts," *see* PUB. L. 110-406, § 6), the court in *Feise v. N. Broward Hosp. Dist.*, No. 14-CV-61556, 2017 WL 3315144 (S.D. Fla. Aug. 3, 2017), reasoned that appearance fees are recoverable because the costs of preparing the transcript are included in the "fees for . . . transcripts" discussed in § 1920(2) and "[i]t is axiomatic that a deposition cannot be transcribed unless a court reporter is physically present at the proceeding." *Id.* at *3. The undersigned finds this construction more reasonable than the courts which have concluded court reporter attendance fees are not taxable; a representative case, *Miles v. Jones*, No. 08-20612-CIV, 2011 WL 10565588, at *2 (S.D. Fla. Feb. 4, 2011), traces the split favoring recoverability of appearance fees to authority from pre-2008-amendment cases without really considering the relationship of the appearance fees to the preparation of the transcript. Accordingly, the undersigned finds the court reporters' appearance fees are recoverable costs under § 1920(2).

As for the remainder of Barber's objections, fees for printing exhibits and processing fees appear to be appropriate costs for obtaining transcripts of depositions "necessarily obtained for use in the case," which is all that is required in this circuit. *E.E.O.C. v. W & O, Inc.*, 214 F.3d 600, 620-21 (11th Cir. 2000). The same is not true, however, for the costs of making electronic copies and condensed copies of the deposition transcripts; those duplicate copies appear to have been made for convenience to counsel.[13] Those costs are not recoverable. *Id.* at 623; *Atl. Specialty Ins. Co. v. Charlie Adventures, LLC*, No. CIV.A. 13-458-CG-N, 2015 WL 4256224, at *3 (S.D. Ala.

---

[13] Defendants' argument the electronic copies of transcripts are recoverable cuts off before reaching its conclusion. (Doc. 169 at 4-5) ("The scanning and provision of electronic copies of the deposition exhibits in lieu of providing paper copies of exhibits, is a necessary cost of making copies of materials necessarily obtained for use in the case under Section"). Assuming Defendants intended to argue § 1983 cases require electronic transcripts more so than other cases, the undersigned cannot discern what supports this.

July 14, 2015) (declining to award costs for duplicate transcripts).  Accordingly, the undersigned

reduces Defendants' awarded costs by $315.00.[14]

### III. Conclusion

For the reasons stated above, Barber's motions for a new trial and/or to alter or amend the

judgment, (docs. 160 & 161), are **DENIED**.  Barber's motion to strike the bill of costs is also

**DENIED**.  The court awards Defendants $5,694.71 in costs.

DONE this 23rd day of August, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[14] This represents $10.00 for the condensed transcript for Barber, (doc. 166-1 at 2); $10.00 for the condensed transcript and $15.00 for the depo disk for James Butler, (*id.* at 4); $10.00 for the condensed transcript and $15.00 for the depo disk for Cheryl Price, (*id.* at 5); $10.00 for the condensed transcript and $15.00 for the depo disk for Dr. Cusick, (*id.* at 6); $16.00 for the condensed transcript and $30.00 for the digital transcript of the deposition of Dr. Roddam, (*id.* at 7); $16.00 for the condensed transcript and $30.00 for the digital transcript of the deposition of Dr. Hood, (*id.* at 8); $16.00 for the condensed transcript and $30.00 for the digital transcript of the deposition of Lloyd Hicks, (*id.* at 9); $16.00 for the condensed transcript and $30.00 for the digital transcript of the deposition of Angela Miree, (*id.* at 10); and $16.00 for the condensed transcript and $30.00 for the digital transcript of the deposition of Leon Bolling, (*id.* at 11).